JOSEPH SEIDEL, ADMINISTRATOR, vs. THE TOWN OF
WOODBURY.

Third Judicial District, Bridgeport, April Term, 1908.
BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, Js.

There is a clear and material distinction between the general, govern-
mental duty imposed by the Act of 1672 (General Statutes,
§ 2013) upon towns or others, to build and repair necessary high-
ways, and the specific, limited duty imposed upon them by the Act
of 1801 (General Statutes, § 2019), to erect and maintain a railing
or fence on such parts of a highway as are so raised above the ad-
joining ground as to be unsafe for travel. The latter obligation was
imposed to protect lawful travelers on the highway from dangers
arising from conditions, outside of its limits, similar to those en-
countered in passing over a bridge; and therefore does not arise
where, as in the present case, the defect consisted of a sloping
shoulder of a country road the top of which was slightly above, and
the bottom about two feet below, the level of the wrought or trav-
eled portion of the highway. Accordingly, a judgment against the
town is erroneous which is based, not upon its failure to keep such
highway in a reasonably safe condition for travel, but solely upon
its supposed duty to maintain a railing beside the shoulder of the
road.
Whether a causeway or embankment might not be constructed within
the limits of the highway, although not covering its whole extent,
which would require fencing within the provisions of § 2019, quære.
An opinion regarding the safety of a highway given in answer to a hy-
pothetical question by a witness who is not an expert, and has no
personal knowledge of the condition of the highway at the time of
the accident, is not admissible.
The legislation in respect to the construction and repair of highways and
bridges, and the nature and extent of the obligations imposed
·thereby, reviewed and explained.

Argued April 15th—decided June 4th, 1908.

ACTION to recover damages for personal injuries result-
ing in the death of the plaintiff's testator, and alleged to
have been caused by the defendant's negligence, brought
by appeal from a judgment of the District Court of Water-
bury to the Superior Court in New Haven County and
heard in damages before Gager, J.; facts found and judg-

ment rendered for the plaintiff for $1,750, and appeal by the defendant. *Error and cause remanded.*

*John H. Cassidy*, for the appellant (defendant).

*John O'Neill*, for the appellee (plaintiff).

HAMERSLEY, J.   The construction and repair of highways is a governmental duty belonging to the State.   It can only be performed through agents of the State.   Those agents may be State officers designated for that purpose, and may be municipal corporations, upon whom the performance of the duty is imposed by law.   In either case, the travelers who use the highway have no legal right to any indemnity from the State against the dangers of an insufficient highway.   In 1672, however, such indemnity was provided for, but only in the manner and to the extent specified in the statute.   In that year the State imposed upon towns the duty of constructing and maintaining needful highways.   Obedience to this mandate might be enforced by indictment, and other means of enforcement were from time to time provided.   But the statute also provided that, upon the concurrence of certain events, a traveler, injured in the use of the highway, might receive indemnity from the State, and that the town which had neglected its statutory duty should, as a penalty for that offense, pay the indemnity, and that this penalty might be enforced in an action on the statute brought by the injured traveler.   Laws of 1672, p. 7.   The concurring events upon which the town's liability to such a penalty can arise are fixed by statute, and are these: (1) A defect in the highway, *i. e.* by want of sufficient repair it is unfit for safe use as a highway.   (2) A failure or neglect by the town to make such sufficient repair, involving the questions of reasonable notice and knowledge, and reasonable time.   (3) An injury caused through or by means of the defect.   (4) Such injury to a person in passing over a highway, *i. e.* while in the lawful use of the way.   No liability on the

part of a town to pay the statutory penalty can arise unless upon the concurrence of all these events. We have held that the statute imposing this penalty upon towns is a penal one, and cannot be extended by construction beyond the plain meaning of its words. This meaning of the statute is well settled, and has been fully restated in some recent decisions. *Bartram* v. *Sharon*, 71 Conn. 686, 694, 43 Atl. 143; *Makepeace* v. *Waterbury*, 74 Conn. 360, 362, 50 Atl. 876; *Upton* v. *Windham*, 75 Conn. 288, 291, 53 Atl. 660.

The duty imposed upon the town is to construct needful bridges and highways and to maintain in good and sufficient repair such bridges and highways. The governmental duty and penalty for neglect is imposed upon all towns, except in cases where a particular person is bound to keep the highway in repair; and in the case of cities charged by charter with the construction and repair of highways, and specially authorized to exercise a judgment in the mode of construction of a quasi-judicial character, a structural defect, the result of an error of judgment, may not incur the statutory penalty, unless, indeed, the plan of construction adopted be one which is totally inadmissible. *Hoyt* v. *Danbury*, 69 Conn. 341, 351, 37 Atl. 1051. And in the case of a town whose officers must exercise some discretion in the mode of construction, it is manifest that the question whether or not a highway is defective by reason of inadmissible construction may be affected by considerations somewhat different from those which determine the question of necessary repair.

In the present case the main contested question relates to the existence of a defect. Was the highway at the place and time of the accident in sufficient repair; that is, was it reasonably adapted for safe use as a highway, in view of its location and the amount and kind of travel it was built to serve?

The specific facts found by the trial court, and upon which its judgment is based, are set forth in the finding, and in the memorandum of decision which is made a part

of the finding. The facts in respect to the construction and repair of the highway at the place of the accident are as follows : The highway runs north and south ; for a short distance northerly and southerly of the point where the accident happened the town constructed the highway in the following manner : The highway was 56 feet wide between fences. The regular traveled track and footway occupied about 16 feet, the east side being about 17 feet distant from the east fence of the highway, and the west side about 23 feet distant from the west fence. On the east side of the traveled track was a gutter, from which sloped eastward a bank about 12 feet high. Westerly of the traveled track (which was about $11\frac{1}{2}$ feet wide) was a space 4 or 5 feet wide, with a slight upper grade, upon which was the footpath. Next westerly of the footpath was the westerly shoulder of the road, which was raised slightly above the level of the footpath. From this shoulder the ground fell about 2 feet, measured perpendicularly in a horizontal width of about $2\frac{1}{2}$ feet, and then sloped at a slight descending grade for about 20 feet, to the west side of the highway. No railing had been erected on the west side of the traveled track at this place to prevent persons, traveling in said track, from going off from the same.

At the time of the accident there was nothing about the ground west of the shoulder of the traveled road material to the case, unless a rock, about a foot and a half high, which was some 10 or 12 feet westerly of the west shoulder. And the court finds proven (although not included in the finding) the further fact that the road was thus constructed many years previously, and no complaint had ever been made to the town of danger existing at this part of the highway.

The duty imposed by the Act of 1672, now in force as § 2013 of the General Statutes, is this : Towns shall build and maintain, in good and sufficient repair, all the needful highways and bridges within their respective townships. If a highway, constructed or maintained in the manner

indicated by the specific facts found by the court, violates the duty thus imposed upon towns, then the highway is defective or insufficient, within the meaning of that part of the Act of 1672 now in force as § 2020 of the General Statutes. The real question, therefore, arising upon the facts found by the court, was whether a highway 56 feet in width, constructed with a traveled track or worked roadbed running through its middle portion, leaving the other parts of the highway unworked, in the manner described, is reasonably safe for travel in view of the purposes for which it is needed and used. A populous city, which worked only a narrow strip through the middle of its streets, leaving the remaining portions rough and unworked, would doubtless fail to perform the duty imposed by the Act. But not so with country towns, especially with those of large area and small population. In such towns a highway worked throughout its limits is the exception. " Towns . . . are not obliged to keep the whole width of the highway free from obstructions and in good condition for being driven upon." *Burr* v. *Plymouth*, 48 Conn. 460, 472. But travelers may be obliged, by reason of events naturally incident to travel, to pass from the wrought to the unwrought part of the highway ; and a highway so constructed that such exceptional departure from the traveled track must involve unnecessary and serious danger may be defective within the meaning of the statute. The real question, therefore, in the present case, was whether the difference of two feet between the level of the traveled track and that of the unwrought portion of the highway and the slope of the ground, from the former to the latter, was so unnecessarily dangerous to any traveler who might be forced to leave the track that the statute imposed upon the town the duty of providing against such danger by widening the way, or lessening the slope of the ground, or otherwise. This question the trial court did not decide, and apparently did not consider. The neglect of duty found by the court was not a neglect of the duty imposed by the Act of 1672, in force as § 2013 of the

General Statutes, in respect to a highway constructed and situated as this highway was, but a neglect of the special and peculiar duty imposed by an Act passed in 1801, now in force as § 2019 of the General Statutes. This Act commanded the doing of a specific, definite act, *i. e.* the erection of a fence in respect to highways which might be constructed and situated in a manner different from that in which it appears, from the facts found by the court, the highway in question was constructed and situated. This misconception doubtless arose in part from the peculiar allegations of the complaint. It may be that the complaint sufficiently alleges a neglect by the town of the duty imposed upon it by § 2013, but it certainly alleges as the main, if not the only, neglect charged, a disobedience of the positive mandate of § 2019. The judgment of the court is plainly based upon a disobedience of this mandate. It is therefore based upon a misconception of the law, which imposes a duty upon the town in respect to the highway in question ; and for this reason we think a new trial should be granted.

The effect of the Act of 1801 (General Statutes, § 2019) has never been directly passed upon. In *Beardsley* v. *Hartford*, 50 Conn. 529, 538, we held that § 2013 might impose a duty upon towns, in the maintenance of a highway, in respect to conditions existing outside the limits of the way, when such conditions actually endanger travel upon the way, and that this duty might require the erection of barricades or other means of protecting travelers, if, in view of all the circumstances, the use of such means could be deemed reasonable and proper, as where, outside of and near the limit of a highway, a pit or excavation renders travel within the highway dangerous, but that the mandatory provisions of § 2019, for erecting fences in the specified instances, did not apply to such case. In *Udkin* v. *New Haven*, 80 Conn. 291, 297, 68 Atl. 253, we held that the responsibility of the town for defective conditions, by force of General Statutes, § 2013, was ordinarily limited to conditions existing within the limits of the highway.

In *Hewison* v. *New Haven,* 34 Conn. 136, 141, we held that conditions existing outside of a highway, which endanger travel upon it, do not necessarily constitute a defect in the way, and the opinion suggests that § 2019 of the General Statutes applies to conditions existing outside the limits of a highway, and was enacted for the purpose of making it clear that these specified dangerous conditions, existing outside the limits of the way, shall be treated as a defect in the way.   We think that, while the provisions of § 2019 apply to conditions existing outside the limits of a highway, they were enacted in 1801 for the purpose of imposing upon towns (so far as towns should be affected by them) a special duty, different and apart from the duty imposed by the Act of 1672 (§ 2020) ; and, as the mere imposition of such governmental duty would give no right of action to any one injured by its breach, the Act specially provided that whoever shall suffer damage by reason of its breach may recover damages from the town.   And from 1801 to the present time the statute imposing this special duty and penalty for its breach has remained upon our statute books as an enactment distinct and separate from that which imposed upon towns the duty of maintaining highways and the penalty for the breach of that duty. This view is confirmed by recalling the occasion for the passage of the Act of 1801.

In early times, while there were instances of the imposition upon persons other than towns of the duty of maintaining a particular highway, such instances were few, but the duty of maintaining particular bridges was more frequently imposed upon persons other than towns.   And so the Act of 1672 imposed upon towns the duty of maintaining all needful bridges and highways within their respective limits, unless it belonged to a particular person to maintain " such bridge in any particular case."   This phraseology was preserved until 1821.   This does not negative the fact that occasionally some person, other than a town, was charged with the maintenance of the highway, or a part of the highway, but it does illustrate and emphasize the infrequency

of such occasions. After 1784 a considerable change in providing for and maintaining routes of travel set in. The power of the federal Congress in the establishment of post-offices called for mail routes. Congress directed that the public mails be carried by the stages, and thereupon our legislature enacted a law compelling the selectmen of the towns, through which the stages charged with the mails passed, to immediately mend and repair the bridges and roads used by the stages, and keep the same in good repair. Rev. 1784, p. 335. The increase of through travel called for the construction of roadbeds different from and more substantial than could reasonably be expected from towns in the performance of the duty imposed upon them by the Act of 1672. This necessity was met by giving to private corporations, known as " turnpike companies, " authority to build highways (for private profit as well as public use) known as " turnpike roads."

Prior to 1784 the doubt whether grants of such corporate franchises would be a violation of our charter of 1662 restrained the legislature in the exercise of such power, but after the treaty of peace in 1784 recognized our independence, the incorporation of turnpike companies commenced, and increased rapidly, until, in the early part of the nineteenth century, turnpike roads, built for private profit by private corporations, which were charged with the duty of their maintenance and repair, supplied, to a large extent, the facilities for through travel. It was in view of this changed condition that the Act of 1801 was framed, for the purpose of imposing the specific duty of erecting and maintaining fences on the sides of each bridge, for protecting travelers against the dangers arising from conditions outside the limits of the bridge highway, and on the sides of such parts of each turnpike road or highway as are so made, above the ground adjoining the road or highway, as to endanger the safety of travelers. The purpose is to impose a specific duty for protection against conditions existing outside the limits of the highway; a duty which is absolute in the case of all bridge highways, and which

becomes absolute in the case of such parts of any turnpike road or highway so constructed as to create similar outside conditions which actually endanger the safety of travelers. The Act reads: " The town, corporation, company, or person, which by law is obliged to maintain any bridge, road, or highway, shall erect and maintain a good and sufficient railing or fence on the sides of such bridge, and on the sides of such parts of each road as are so made or raised above the adjoining ground as to endanger the safety of travelers; and if it shall so happen that any person shall suffer any damage in his person or property, by reason of any want of, or defect in any such railing or fence, such town, corporation, company or person shall pay to him, her or them who shall so suffer, double damages." Comp. 1808, p. 381. This Act remained unchanged in language until 1821, and in meaning and legal effect until the present time. It is to be noticed that the duty to maintain highways in sufficient repair is imposed absolutely upon all towns, except in a particular case some particular person shall be charged with the duty. Comp. 1808, p. 120. And the same duty is imposed absolutely upon all towns, with the same exception, by § 2013 of the General Statutes. But the specific limited duty imposed by the Act of 1801 is not imposed upon all towns absolutely, but is imposed upon the town, corporation, company, or person that may be charged with the maintenance of the particular bridge, highway, or road; and this special imposition of a specific duty is made in the same manner in § 2019 of the General Statutes. That this special imposition of this specific duty was made with particular reference to turnpike roads or highways, is further illustrated in the Act of 1806, which provides for State commissioners to oversee turnpike roads or highways, and commands them to require suitable railings to be erected, at the expense of the turnpike company, at such places on the turnpike road or highway where the commissioners may consider them necessary. Comp. 1808, p. 667, § 3. And this provision remained in force until turnpike roads or highways became obsolete,

and turnpike legislation disappeared from our statute book in the Revision of 1902. See General Statutes (1888) § 2733.

In view of the language of the statute, of the occasion of its original enactment, of the conditions then existing indicating its purpose, and of cognate legislation, we think that the special, specific duty of building fences on the sides of highways, imposed by § 2019, is imposed for the purpose of protecting travelers, lawfully using the highway, from dangers arising from conditions outside the limits of the highway, and is not a duty imposed upon towns generally, but only upon a particular town charged with the maintenance of a particular bridge or of a particular highway, parts of which are so constructed, in relation to adjoining land outside its limits, and therefore not within the control of the town, that the safety of travelers in using the way is endangered in a manner and to a degree similar to the danger encountered in passing over a bridge. It is immaterial to inquire whether or not a causeway or artificial embankment might be constructed within the limits of the highway, although not covering its whole extent, so that the duty of fencing would come within the meaning of § 2019 of the General Statutes, for the traveled track running through the middle portion of the highway as described in the finding is plainly not such a causeway or embankment. The trial court has therefore based its conclusion that the highway in question was defective (the burden of proving it sufficient being, by reason of the default, upon the defendant) upon the neglect of the defendant to perform a specific duty imposed by § 2019, which duty that section does not impose upon the defendant in this case. This error is vital, and vitiates the judgment, unless, indeed, we can say that it is apparent upon the face of the record that the court should have found that the defendant neglected to perform the duty of repair imposed upon it by § 2013. We certainly cannot say this, nor can we assume that the court would have found one way or the other upon a question of fact which the court apparently did not

consider, and could not have fairly determined while controlled by its misconception of the statute. As, for instance, the court in the finding treats the fact that in some way an accident did happen, as raising a presumption that the situation of the highway was in violation of the statute, it is manifest that the mere possibility of an accident thus proved might have a weight in determining a violation of § 2019, to which it clearly would not be entitled in determining the violation of § 2013. The duty imposed by the latter section does not place upon towns the intolerable burden of making all highways within their limits secure against the possibility of accidents. *Campbell* v. *New Haven*, 78 Conn. 394–396, 62 Atl. 665 ; *Goodspeed's Appeal*, 75 Conn. 271, 274, 53 Atl. 728 ; *Udkin* v. *New Haven*, 80 Conn. 291, 296, 68 Atl. 253. This error is substantially and, in view of the peculiar circumstances of the hearing, sufficiently suggested in the reasons of appeal.

The court also erred in permitting the witness Sanford to state his opinion as to the safety of the road, in answer to a hypothetical question which assumed the facts recited therein to be true. The witness did not qualify as an expert road-builder, or as having any special knowledge or skill in the construction of roads, and had no personal knowledge of the condition of the highway at the time of the accident. His opinion was not admissible, either under the rule permitting expert testimony, or under our practice of permitting nonexperts to state an opinion in respect to conditions they have seen and have described in their testimony. *Taylor* v. *Monroe*, 43 Conn. 36, 43 ; *Sydleman* v. *Beckwith*, ibid. 9, 12 ; *Ryan* v. *Bristol*, 63 id. 26, 38, 27 Atl. 309 ; *Campbell* v. *New Haven*, 78 Conn. 394, 395, 62 Atl. 665. But the mistake belongs rather to that class of harmless mistakes, liable to occur in passing upon questions of relevancy, more or less remote, and which cannot ordinarily furnish ground for a new trial. *Leonard* v. *Gillette*, 79 Conn. 664, 669, 66 Atl. 502.

There is error, the judgment of the Superior Court is

reversed and the cause remanded for further proceedings according to law.

In this opinion the other judges concurred.