CLARISSA A. HORTON *vs.* JOHN A. MACDONALD, STATE
HIGHWAY COMMISSIONER, ET ALS.

First Judicial District, Hartford, October Term, 1926.

WHEELER, C. J., CURTIS, MALTBIE, HINMAN AND SIMPSON, Js.

With respect to trunk-line and State aid highways, it was the legis-
lative intent, as expressed in §§ 1479, 1486 and 1515 of the
General Statutes, to impose upon the highway commissioner,
as the representative of the State, the same liabilities, with the
same limitations thereon, as had previously rested upon the
towns.

At the place of the accident in the present case, the trunk-line high-
way was nearly level, descending in either direction to the north
and south, and intersected on the west by a side street which
rose at an abrupt grade. While turning from the highway into
the street the plaintiff's mother, who was operating an auto-
mobile in which she was a passenger, failed to engage the gears
of the car which commenced to roll slowly backward at a point
where its rear end was about five feet from the macadamized
portion of the highway, and, despite the application of the
brakes, continued so to roll across the pavement, which was from
twelve to fourteen feet in width, then across two lines of trolley
tracks, which occupied a space of eleven feet, and finally across
a section of turf extending from eight to ten feet from the east-
erly trolley rail, where the soft earth gave way under the weight
of the rear wheels and the car plunged down an embankment
forty feet in depth. For more than forty years, the traveling
public had made use of the section of the highway occupied
by the trolley tracks and of the space, about four feet in width,
lying between the easterly rail and two lines of trolley and power
company poles; and though, for some period of time, the edge
of the embankment had been accepted as the easterly boundary
of the highway, the highway commissioner had not erected or
maintained a fence thereon. The trial court rendered judgment
for the plaintiff. *Held:*

1. That the trial court might reasonably have concluded that because
of the absence of a fence at the embankment, the highway was
not reasonably safe for travel in view of the purposes for which
it was used, and, therefore, the highway commissioner was liable
upon the first of the two causes of action created by § 1515 of
the General Statutes, viz., for the maintenance of a "defective
road."

2. That under all the circumstances of the case, including the volume and nature of the traffic on the highway, the trial court might reasonably have concluded that the commissioner was liable upon the second cause of action created by § 1515, viz., for the failure to maintain a "railing or fence on the side . . . of such road so raised above the adjoining ground as to be unsafe for travel."

3. That the fact that the unfenced embankment was from eighteen to twenty feet from the paved portion used for travel, did not compel the conclusion, as a matter of law, that the highway was not defective.

4. That the presence of the poles as guards or warnings was merely a fact to be considered in determining whether the highway was defective.

5. That there was no merit to the defendant's claim that the conduct of the plaintiff's mother constituted negligence contributing in a material degree to the plaintiff's injuries.

Argued October 6th—decided December 16th, 1926.

ACTION to recover damages for personal injuries, alleged to have been caused by the defendant's negligence, brought to the Superior Court in Hartford County and tried to the court, *Dickenson, J.;* judgment for the plaintiff to recover $25,000 from the defendant Highway Commissioner, from which he appealed. *No error.*

*Joseph F. Berry,* for the appellant (the defendant Highway Commissioner).

*Hugh M. Alcorn,* with whom was *James E. Cannon,* for the appellee (plaintiff).

WHEELER, C. J.  The appeal of the highway commissioner is limited, practically, to two grounds: (1) that the commissioner was not negligent in having failed to have erected and maintained a railing or fence at the point of accident in South Main Street, Windsor Locks, for the reason that the law imposed no such duty upon him; (2) that the finding when corrected in

the particulars as claimed by the appellant, would show, as a matter of law, that the negligence of the driver of the automobile materially contributed to the injuries for which plaintiff sues. Neither ground can be disposed of without having before us the material facts found by the court. We state, first, the facts involved in ground one.

The accident occurred at a point east of the intersection of South Main Street and School Street in the town of Windsor Locks. South Main Street is a trunk-line highway running north and south. Where School Street intersects it on the west at about right angles South Main Street is for a short distance nearly level, and descends for several hundred feet from this level, on the south and north, upon a four per cent. grade. School Street from its intersection with South Main Street rises abruptly westerly upon a six to eight per cent. grade. South Main Street extends east from the point of intersection for about six feet to a macadam roadway twelve to fourteen feet in width. East of this macadam roadway are two lines of trolley tracks nearly flush with the roadway, which occupy a space of about eleven feet to the east rail of the east trolley track, and from this point to the edge of the embankment hereinafter referred to was from eight to ten feet. From the intersection of School Street east as far as the embankment, the surface of the macadam road, the trolley tracks and the land to the east, was substantially level. South Main Street at the point of intersection and for a considerable distance north and south is narrow, and vehicles meeting and passing at this point use the trolley tracks to make travel more safe; for more than twenty years prior to the accident the traveling public had used the highway occupied by the trolley tracks and the space between the east rail and two lines of poles as well as the rest of the highway.

These two lines of poles, one the railway poles, the other the power company poles, were located about four feet easterly of the east rail of the eastbound railway track and about six feet from the edge of the embankment. None of these poles were in the space opposite the intersection and between the east trolley track and the embankment. The space between these lines of poles and the embankment is turfed. The embankment leads to the tracks of the New York, New Haven & Hartford Railroad Company, some forty feet beneath. The edge of this embankment has for forty years been the accepted boundary line between the highway and the railroad. The railroad up to about eight years ago had maintained on the boundary line a fence consisting of eight-inch posts with strands of wire between the posts. At the time of the accident the fence was in a state of dilapidation and the space between the edge of the embankment to the railroad tracks beneath was open and without protection of any kind. The duty of maintaining and controlling South Main Street as a public highway had been imposed upon the highway commissioner from about 1910, and both he and his subordinates had, from that time, known the locality near this intersection to be a dangerous place for public travel due to the narrowness of the highway, the intersecting street and the abrupt drop to the tracks east of the embankment. The commissioner has never erected or maintained a fence at any point between the eastbound trolley track and the embankment. A substantial fence such as is commonly used along public highways in this State, could have been erected there at a cost of about $100, and if erected and in good order would have prevented the plaintiff's automobile from falling over this embankment.

General Statutes, § 1414, gives to any person injured

by means of a defective road or bridge, a right of action to recover damages from the party bound to keep it in repair, and § 1413 gives to any person injured "by . . . the want" of "a sufficient railing or fence on the side of such bridge, and of such parts of such road as are so made or raised above the adjoining ground as to be unsafe for travel," a right of action to recover damages from the party bound to keep it in repair. The duty of maintenance and repair of so-called trunk-line highways, and State aid highways, was by the Good Roads Act and its amendments taken from the towns and imposed upon the highway commissioner as the representative of the State. With the transposition of this duty, and as a necessary consequence of it, the liability for injuries arising from defects in such highways and for the failure to erect and maintain upon such bridges and along such roads a sufficient railing or fence where this was necessary, theretofore placed upon the towns, was placed upon the commissioner. General Statutes, §§ 1479, 1486, and 1515. We held in *Perrotti* v. *Bennett,* 94 Conn. 533, 542, 109 Atl. 890, the legislative intent in this Act to be, "to impose upon the highway commissioner, as the representative of the State, the same burden theretofore laid upon the towns as respects these highways, and that the limitations upon municipal liability apply equally to State liability." The section of the statutes under which this liability was imposed at the time the present action arose reads: "Any person injured in person or property through the neglect or default of the state or any of its employees by means of a defective road or bridge which it is the duty of the state highway commissioner to keep in repair, or by reason of the want of any railing or fence on the side of such bridge or part of such road so raised above the adjoining ground as to be unsafe for travel, which railing or fence it is the duty of said highway

commissioner to erect and maintain, . . . may bring a civil action to recover damages sustained thereby against the highway commissioner," etc. General Statutes, § 1515. The liability imposed upon the commissioner under this section was for two causes of action, that arising under § 1414, and that under § 1413. The cause of action arising under the first named statute, applicable to this case, is for the maintenance of a defective road. If the highway is "reasonably safe for travel in view of the purposes for which it is needed and used," it cannot fall within the ban of this statute. If it is not reasonably safe for travel in view of the purposes for which it is needed and used, it is a defective highway within the meaning of this section. The cause of action arising under the second named statute, applicable to this case, is for the failure to maintain a sufficient railing or fence on a part of a road raised above the adjoining ground so as to be unsafe for travel. What will be a sufficient railing or fence is such a one as will under the circumstances be adequate to reasonably protect the travel upon the highway.

Whether the highway is defective, or the accident due to the want of a sufficient railing or fence, or what will constitute in a given case a sufficient railing or fence, are necessarily questions of fact, and reviewable by us only as other questions of fact are reviewable. The practical question in the instant case is whether an unfenced embankment almost perpendicularly raised above the ground, forty feet beneath and located about six feet from the traveled part of a much traveled highway, with the intervening space between the traveled part of the highway and the embankment nearly level, constituted a defective highway. The fact that the dangerous place was from eighteen to twenty feet from the traveled macadam way does not determine,

as a matter of law, that the highway was not defective. Neither does the fact that the portion of the highway used for travel did not go within six feet of the embankment determine this. Its distance from the traveled way· is a circumstance to be considered in determining whether the highway is reasonably safe for public travel. So, too, were the lines of poles which the defendant claimed should have served as guards or warnings, facts to consider in determining this ultimate point. *Taylor* v. *Monroe,* 43 Conn. 36, 45; *Smith* v. *Milford,* 89 Conn. 24, 32, 92 Atl. 675.

Under the facts found we not only cannot hold as matter of law that the trial court might not reasonably have held that this highway was not reasonably safe for public travel at the place of this accident, but are of the opinion that this conclusion was fully justified, upon the facts found, as a result of the failure .of the commissioner to have erected a fence along this embankment at the point of the accident, and that this was a conclusion of fact.

The second cause of action, the failure to have erected a fence along the part of the highway so raised above the adjoining ground as to render it unsafe for public travel, was, upon the facts, clearly a conclusion of fact for the trial court, both as to whether a railing or fence should have been erected and maintained, and what was a sufficient fence to have erected and maintained. The danger to a traveler in the dark, or in a fog or blinding rain, departing from the usual line of travel the five or six feet to the embankment, the almost instantaneous space of time in which the motor-car might cover this space, the liability of the driver of a motor vehicle passing down School Street with its heavy grade, or backing ·down, losing control of his car through the slipperiness of the way, or through a defect in his car, or the failure of its

mechanism to engage or operate, to run over this embankment, might have been some of the factors which might reasonably have led the trial court to the conclusion that the want of a sufficient railing or fence at this point of the embankment rendered the highway unsafe for public travel. Conditions such as were present in this case would, even before motor vehicle travel had become the major part of the travel on this highway, have justified the conclusion that it was the duty of the town to have erected a railing or fence at this point. The change in the mode of public travel has not changed the standard of duty, but it has increased the danger to public travel and, upon the recognized principle that the greater the danger the greater the care, made it incumbent upon the highway commissioner to exercise greater care in the performance of his duty to make the highways reasonably safe for public travel, and to fence such portions of the highways under his control as would be rendered unsafe for public travel because raised above the adjoining ground. We are enforcing no new duty in this case, nor imposing a new duty upon the commissioner. We are merely enforcing the duty which rested upon the town prior to the assumption by the State of this duty over these kinds of highways, in the light of present conditions of public travel which increase the danger to travelers from defective highways and those rendered unsafe for public travel through the want of fence or railing in those portions of the highway raised above the adjoining ground. The case before us is not that of an unfrequented country road, where a much less degree of care would be required, but a much frequented, narrow trunk-line highway at a point of extreme danger to travelers departing from the usual line of travel to the edge of this embankment. *Murphy* v. *Norfolk,* 94 Conn. 592, 596, 110 Atl. 62. The facts

found bring the case within each of these causes of action.

But this conclusion does not establish the plaintiff's case; she must go further and show that the default of the commissioner in the performance of his duty was the proximate cause of her injuries, and that cannot be held if her injuries were contributed to in material degree by the negligence of the operator of the automobile. Upon this point counsel for defendant places most emphasis. Among the circumstances which the court considered upon this point were: The crest of the hill was at the point of intersection of these streets, and the space opposite the intersection open, clear to the embankment. The driver of the car, the mother of the plaintiff, who was an experienced driver and familiar with this location and knew its danger, was driving toward the south from a point north of School Street; on reaching School Street she turned to go up this street by shifting the gears of her car from first to second. As she was turning into School Street she found it necessary to shift to first gear in order to make the grade. The rear end of the car was about five feet from the macadamized part of South Main Street and about thirty-five feet from the edge of the embankment when the car began to roll backward. The driver endeavored to engage the gears of the car but failed, and immediately on realizing that the car was rolling backward applied the brakes, which were in good order. The car backed across South Main Street so slowly that a slight obstruction would have stopped it. It had gone a little more than two of its car lengths without a turning of the steering-wheel, when it reached the embankment and had then been brought almost to a stop when the soft earth gave way under the rear wheels and the car plunged to the railroad track beneath. Upon the finding the question whether the driver of the car ex-

ercised reasonable care under the circumstances, taking into account the imminence of the danger, the short interval for action, and the efforts she made to stop the car, was one of fact for the trier to draw. *Flynn* v. *West Hartford*, 98 Conn. 83, 118 Atl. 517.

The defendant bases his claim of the contributory negligence of the driver of the car upon certain corrections of the finding. None of these are well taken so far as the defendant's claims for correction are concerned. Only one of these requires a more particular notice. The defendant seeks to add a finding that the car continued from the time it started to roll, straight backward, without any turn of the steering-wheel, until the rear wheels reached the edge of the embankment, and that reasonable care required that the car be turned into South Main Street, and had it been so turned the accident would have been avoided. Upon the finding thus corrected the defendant attacks the conclusions of the trial court that plaintiff did everything a reasonable person could do, or ought to have done, to arrest the progress of the car, and to prevent it from going over the embankment, and that had the steering-wheel been used for the purpose of backing the car into South Main Street, it was physically possible to do so, but in view of the imminence of the danger and the inability of the driver to see what was behind her, reasonable care required that she concentrate her efforts on bringing the car to a stop as she did.

We cannot hold, as a matter of law, that this conclusion was erroneous; rather we think it was a conclusion of fact and under the circumstances here present for the trier to draw. *Flynn* v. *West Hartford*, 98 Conn. 83, 118 Atl. 517. Nor can we find that the trier did not consider the facts in evidence as thus claimed by the defendant.

There is another and a conclusive reason why the

defendant's claim for correction in this particular cannot be granted. Both the driver of the car and the plaintiff testified that the driver kept hold of the steering wheel from the time the car began to roll backward and endeavored to turn the car to the north, up South Main Street, where there was some grade. The exhibit in evidence shows that the car did not go directly across South Main Street, but upon a diagonal line. No testimony was offered in contradiction of this. The finding should be corrected to include this fact. Thus corrected, the defendant's claim would fall for lack of proof. The trial court recognized that the driver of this car did not have the strength of a man in operating the car, and we must also test the court's conclusion in the light of this finding.

There is no error.

In this opinion the other judges concurred.