ANTHONY PORPORA, ADMINISTRATOR (ESTATE OF PASQUALE PORPORA) *vs.* CITY OF NEW HAVEN.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued June 9th—decided October 9th, 1936.

*Thomas R. Robinson,* with whom was *Vincent P. Dooley,* and, on the brief, *David J. McCoy,* for the appellant (defendant).

*William F. Geenty,* with whom were *Thomas R. Fitzsimmons* and *Samuel M. Gordon,* for the appellee (plaintiff).

AVERY, J. On September 14th, 1933, at about 6.45 A. M. daylight saving time, the plaintiff's decedent, Pasquale Porpora, was driving a small truck from New Haven to East Haven and while crossing the Tomlinson Bridge the truck plunged through the railing on the north side and fell into the water, and the plaintiff's decedent was drowned. The plaintiff, as his administrator, brought an action to recover for his death, alleging among other things that the defendant had failed to erect and maintain a sufficient railing or fence so as to make the highway reasonably safe for travel. The case was tried to the jury and a verdict was returned for the defendant but, on appeal, we found error (*Porpora* v. *New Haven,* 119 Conn. 476, 177 Atl. 531), and the cause was remanded for a new trial. The case was thereafter tried to the court and judgment rendered for the plaintiff, from which the defendant has appealed.

The trial court concluded that the city of New Haven had failed in its duty to provide a sufficient fence upon the bridge and that, at the time of the accident, plaintiff's intestate was operating his automobile as a reasonably prudent driver would under the circumstances and was free from contributory negligence. On this appeal, the defendant seeks to destroy these conclusions by corrections of the finding, seeking to add certain paragraphs of the draft-finding to subordinate facts found by the court, and

to strike from the finding certain facts found. The appellant further contends that the court did not correctly determine the statutory duty imposed upon the defendant in reference to the maintenance of the bridge in question; and, further, that under our statutes (General Statutes, §§ 1419, 1420, 5987 and 6030) no cause of action exists in favor of the administrator of a decedent who is killed by reason of a defective bridge.

From an examination of the evidence certified, it appears that the appellant is entitled to some of the corrections in the finding of subordinate facts as made by the trial court, but no correction is permissible which would affect the basic conclusions which are established by the following facts, appearing in the finding, which are fully supported by the evidence: The movable portion of the bridge consists of two lifts approximately seventy feet in length. The road surface is forty-two feet wide and on each edge is a sidewalk nine feet in width elevated six inches above the roadway by a curb, the top of which is flush with the surface of the sidewalk and has a smooth round nosing. On the outside edge of each lift is a railing three feet in height constructed of cast iron posts which are fixed to the floor of the bridge. The posts are set thirteen feet apart center to center and there are six upon each side of each lift. They have an external diameter of four inches and an internal diameter of three inches, with two rails of wrought iron pipe, having an external diameter of three inches, running horizontally at the top and bottom of each post. Each end of these rails is affixed to one of the upright posts by one one-quarter inch steel rivet. Between the rails are steel pickets three-quarters of an inch in diameter. This railing was designed for the sole purpose of preventing pedestrians from falling into the water, and was not adaptable to

prevent automobiles from leaving the highway when out of control as a result of skidding due to mishap or mischance, naturally incident to traffic, which might arise from unforeseen circumstances, and the only protection provided to prevent moving automobiles from leaving the highway in such event was the six inch curb above mentioned. There are double trolley tracks in the roadway and a crossover about sixty feet west from the lift portion of the bridge. At that point, there is a seam in the highway extending its entire width and located where the bridge approach and the causeway to the bridge join.

The plaintiff's decedent was operating his automobile at a speed of about thirty miles an hour on his right-hand side of the road. There was no traffic on the highway at the time but it was raining and the surface was slippery. As he approached the west end of the bridge, he turned to the left onto the trolley rails to avoid the seam. As he did so, his truck skidded, veered to the south and struck the gate about twenty-five feet from the lift portion of the bridge. The truck was then deflected from the gate, skidded and traveled at an angle of about 45° across the west lift of the bridge, over the northerly curb and sidewalk and into the river. The curb or railing on the bridge did not retard the progress of the truck to any noticeable degree. There is support in the evidence for the trial court's conclusion that the defendant had failed in its duty to provide a sufficient railing upon the bridge to render it reasonably safe for public travel. The trial court found that there was nothing unusual in the manner in which the deceased was operating his truck, and that in getting on or off the trolley tracks it started to skid. Upon the facts found and the evidence certified, the conclusion that the decedent was in the exercise of due care and free from contributory negligence·

was within the province of the trial court. We cannot say that as a matter of law the speed at which the automobile was proceeding was so excessive under the circumstances as to constitute negligence, nor would the fact that the car skidded on the wet and slippery road necessarily show negligence. *Shinville* v. *Hanscom,* 116 Conn. 672, 673, 166 Atl. 398.

The appellant contends that no recovery may be had for death resulting from a defective highway or an insufficient railing on a bridge under the law of this State. The substance of this claim is that General Statutes, §§ 1419 and 1420, the applicable parts of which are appended in footnote (a), are penal in their nature and a cause of action created by them does not survive after the death of the plaintiff. These statutes are to be read in connection with that part of § 5987 and § 6030, appended in footnote (b).

The forceful arguments presented upon this issue have led us to reëxamine the extent to which under our law causes of action survive. Previous to 1848 we had no statute permitting a recovery of damages due to death by wrongful act, although there were statutes providing that pending actions, with certain exceptions, should not abate upon death. Compilation of 1838, pp. 49, 75. There was a statute, which had originated in 1808, providing for a recovery of a fixed sum for death due to a defect in a highway. Revision

---

(a) SEC. 1419. BRIDGES AND ROAD TO HAVE RAILINGS. The party bound to maintain any bridge or road shall erect and maintain a sufficient railing or fence on the side of such bridge, and of such parts of such road as are so made or raised above the adjoining ground as to be unsafe for travel; and whoever shall suffer damage in his person or property by reason of the want of any such railing or fence may recover damages from such party.

SEC. 1420. DAMAGES FOR INJURIES BY DEFECTIVE ROADS OR BRIDGES. Any person injured in person or property by means of a defective road or bridge may recover damages from the party bound to keep it in repair * * *

of 1808, p. 120; Compilation of 1838, p. 337. In 1848 a statute providing broadly for the survival of actions for injury to the person, whether or not resulting in death, was enacted; Public Acts, 1848, Chap. 5; and at the same session the act permitting a recovery of a specific sum for death due to a highway defect was repealed. Public Acts, 1848, Chap. 49. In 1851 an act was passed providing that if any person should be deprived of life in consequence of certain acts or omissions of servants of a railroad company, the company should pay to the parties named in the act a certain sum to be recovered in an action upon the statute. Public Acts, 1851, Chap. 43. However, this court sus-

(b) SEC. 5987. ACTION FOR INJURIES RESULTING IN DEATH; DAMAGES. In any action surviving to, or brought by an executor or administrator for injuries resulting in death, whether instantaneous or otherwise, or whether caused by the negligence of the defendant or by his wilful, malicious or felonious act, such executor or administrator may recover from the party legally at fault for such injuries just damages not exceeding ten thousand dollars, * * *

SEC. 6030. SURVIVAL OF ACTIONS AND CAUSES OF ACTION. No cause or right of action shall be lost or destroyed by the death of any person, but it shall survive in favor of or against the executor or administrator of such deceased person. No civil action or proceeding shall abate by reason of the death of any party thereto, but it may be continued by or against the executor or administrator of such decedent. In case of the death of any party plaintiff, his executor or administrator may enter within six months thereafter and prosecute the suit in the same manner as his testator or intestate might have done if he had lived; and, in case of the death of any party defendant, the plaintiff may have a writ of scire facias against such decedent's executor or administrator to show cause why judgment should not be rendered against him, which shall be served at least twelve days before the day upon which it is returnable, and upon its return the action may proceed. The provisions of this section shall not apply to any cause or right of action or to any civil action or proceeding the purpose or object of which is defeated or rendered useless by the death of any party thereto; nor to any civil action or proceeding whose prosecution or defense shall depend upon the continued existence of the persons who are plaintiffs or defendants; nor to any civil action upon a penal statute.

tained an action against a railroad for a death due to its negligence which occurred in 1853, under the provisions of the act of 1848. *Soule* v. *New York & N. H. R. Co.*, 24 Conn. 575. In 1853, as a part of the general revision of the railroad law, an act was passed in substitution for the act of 1851, which provided for a recovery under certain conditions of damages not exceeding $5000 nor less than $1000 for loss of life upon a railroad, with a provision as to the persons among whom the amount recovered should be distributed. Public Acts, 1853, Chap. 74, § 8.

In 1861, *Murphy* v. *New York & N. H. R. Co.*, 30 Conn. 184, came before this court and a recovery by the plaintiff against a railroad for death at a railroad crossing caused by negligence of its servants was sustained; the point particularly in issue was whether there might be such a recovery where the death was instantaneous; but the significance of the decision to our inquiry lies in the fact that the action was apparently decided, not under the provisions of the railroad law, but under the general statute as to the survival of actions. In 1865 the action of *Goodsell* v. *Hartford & N. H. R. Co.*, 33 Conn. 51, was heard by us; that was an action based upon the act of 1853; the court referred to the general survival statute of 1848; it stated that the act of 1853 selected a certain class of cases, those where death resulted from the fault of a railroad company, and with reference to that had two purposes, one to limit the extent of damages, which had been entirely discretionary, and the other to determine the method of distributing the sum recovered; and it was held that the act of 1853 was not inconsistent with the general survival statute but was "additional to" it in the respects mentioned. See also *Waldo* v. *Goodsell*, 33 Conn. 432, 434; *McElligott* v. *Randolph*, 61 Conn. 157, 159, 22 Atl. 1094. In the course of the opinion

in the *Goodsell* case we referred to the fact that Connecticut was among the first states to break away from the then generally accepted view that injury due to the taking of life was without a remedy; and we said (p. 55): "According to numerous decisions [the] right of action [for injury to the person] embraces damages for personal injuries and sufferings of the party if he lives and brings suit. *Seger* v. *Barkhamsted,* 22 Conn. 290; *Masters* v. *Warren,* 27 id. 293. If he dies, the same cause of action, that is, *for the same damages,* survived to his executor or administrator." It is to be noted that the decisions referred to sustained a right of recovery by a person injured but not killed as the result of a highway defect.

In 1869 an act was passed providing for a recovery of damages for death due to the failure of a railroad company to fence its road when on or adjacent to a highway. Public Acts, 1869, Chap. 48.

This was the situation of our law until the Revision of 1875. In that Revision the provisions concerning the distribution of damages recovered, which previously had formed a part of the statute permitting a recovery for death due to the fault of a railroad company, were incorporated in the general survival statute, with a reference to them in the former statute, but the limitation as to the amount of recovery continued to be a part of the former alone. Revision of 1875, pp. 422, 488.

In 1877 an act was passed in which it was provided that "in all actions by an executor or administrator for injuries resulting in death from negligence," the executor or administrator might recover from the party legally in fault just damages not exceeding $5000, to be distributed as provided in the general survival statute in the Revision of 1875, and with a further provision that no action should be brought upon the

statute but within one year after the neglect complained of; and the statute repealed the act in regard to a recovery for damages due to loss of life upon a railroad and all other acts or parts of acts inconsistent with it. Public Acts, 1877, Chap. 78. In the Revision of 1888, there having been no further statutory changes since that of 1877, the general provision for the survival of actions was retained and it was provided that all actions for injury to the person, whether the same did or did not instantaneously or otherwise result in death, should survive to the executor or administrator, with a provision that the cause of action must have arisen not more than one year before the death of the deceased, and that the damages recovered should be distributed in a certain way; Revision of 1888, § 1008; the provisions of the act of 1877 formed the next section and it was provided that "in all actions by an executor or administrator for injuries resulting in death from negligence," just damages might be recovered not exceeding $5000, to be distributed as provided in the preceding section, provided no action should be brought but within one year after the neglect complained of. In 1890 the case of *Ryan* v. *Bristol,* 63 Conn. 26, 27 Atl. 309, and in 1902 the case of *Upton* v. *Windham,* 75 Conn. 288, 53 Atl. 660, came before this court; both were governed by the statute law existing previous to the Revision of 1902; and in each we sustained a recovery for death due to a highway defect, consisting in the former of an insufficient fence, although, to be sure, the right to recover for a death so caused was not put in issue in either case.

In the Revision of 1902, although there had been no further statutory changes, substantial alterations were made in the statutes. The general provision for the survival of actions was omitted; it was provided that "the executor or administrator of any person whose

death shall have been caused by negligence, may recover of the party legally in fault just damages, not exceeding five thousand dollars;" § 1009 of the Revision of 1888 was retained, but the provision that the action must be brought within one year from the neglect complained of was omitted; and the provision concerning the distribution of damages which had formed a part of § 1008 of the Revision of 1888 was placed in the title "Courts of Probate." Revision of 1902, §§ 399, 1094.

These changes evidently did not meet with approval, because in 1903 another act was passed, restoring the broad provision concerning the survival of actions. Public Acts, 1903, Chap. 193. The first section of that act provided: "No cause or right of action shall be lost or destroyed by the death of any person, but shall survive in favor of or against the executor or administrator of such deceased person." The second section dealt with the survival of pending actions. The third section provided that the act should not apply in the case of a cause or right of action the purpose or object of which would be defeated by the death of any party, or which was dependent upon the continued existence of the persons who were plaintiffs or defendants, or to any civil actions upon a penal statute. The fourth section provided that "in all actions surviving to or brought by the executor or administrator for injury resulting in death, whether instantaneous or otherwise," the executor or administrator might recover from the party legally in fault just damages not exceeding $5000, but that no action should be brought upon the statute "but within one year from the neglect complained of." The fifth section provided that "all damages recovered under this act" should be distributed as provided in § 399 of the Revision of 1902. The sixth section expressly repealed § 1094 of the

Revision of 1902 and the provisions in that Revision concerning the abatement of pending actions by death. In the Revision of 1918 the general arrangement of the statutes in the Revision of 1902 was followed; the provisions of the first section of the act of 1903, in identical language, were joined with the provisions of the second section, to make a single section; § 6177; those of the fourth section took the place of the section of the 1902 Revision concerning a recovery for death due to negligence; § 6137; but instead of stating that "all damages" recovered under the broad provisions of the act should be distributed in accordance with the provisions of § 399 of the Revision of 1902, the statute providing for such distribution was in terms restricted to damages recovered under § 6137. § 5064. Under this statute, the United States Circuit Court of Appeals held that an action for death due to a highway defect survived. *Waterford* v. *Elson,* 149 Fed. 91, 95.

In *Lamphear* v. *Buckingham,* 33 Conn. 237, 246, we said of the act of 1853: "The General Assembly intended by the act either to regulate and limit the right of action then existing in favor of the administrator or to provide a new and substitute one. And whether one or the other is a question of some nicety, which it is of no importance to discuss or decide," that is, in that case. In *Radezky* v. *Sargent & Co.,* 77 Conn. 110, 112, 58 Atl. 709, we held that the act of 1853, and its successor, now § 5987 of the General Statutes, did create a cause of action, of which the requirement that the action be brought within a definite time was a condition to the right, not a limitation upon the remedy. See also *DeMartino* v. *Siemon,* 90 Conn. 527, 528, 529, 97 Atl. 765; *Korb* v. *Bridgeport Gas Light Co.,* 91 Conn. 395, 397, 99 Atl. 1048.

While the statute of 1903 was in effect, the case of *Kling* v. *Torello,* 87 Conn. 301, 87 Atl. 987, was

brought. That was an action to recover for death due to an assault. At the conclusion of the evidence, the defendant moved that a verdict be directed in his favor because death as a result of an assault was not within the provisions of the act of 1903; the trial court granted the motion, and later, on February 4th, 1913, denied a motion to set aside the verdict rendered in accordance with its direction. On the same day the motion was denied, there was introduced in the Senate a bill which inserted in § 4 of the act of 1903, after the words "whether instantaneously or otherwise" the words "or whether caused by the negligence of the defendant or by his wilful, malicious, or felonious act." Public Acts, 1913, Chap. 148. The provisions of our present statutes are the same as those in the 1918 Revision, except that this change is incorporated. Revision of 1930, §§ 4983, 5987, 6030.

In 1925 an act was passed which provided a right of recovery where a person was injured by reason of a defect in or want of a sufficient railing or fence upon a highway which it was the duty of the state highway commissioner to maintain, and specific provision was made for a recovery in the case of the death of any person by reason of such neglect or fault; and this has since continued as a part of our law. Public Acts, 1925, Chap. 263, § 47; Revision of 1930, § 1481. We have said of this statute: "We think the legislative intent was to impose upon the highway commissioner, as the representative of the State, the same burden theretofore laid upon the towns as respects these highways." *Perrotti* v. *Bennett*, 94 Conn. 533, 542, 109 Atl. 890; *Horton* v. *MacDonald*, 105 Conn. 356, 361, 135 Atl. 442; *Dunn* v. *MacDonald*, 110 Conn. 68, 76, 147 Atl. 26.

It thus appears that, except for the brief period when the provisions of the Revision of 1902 were in effect,

at all times since 1848 there has been a general provision that all causes of action for death due to personal injury, aside from certain types of action particularly specified, shall survive; that the act of 1848 was broad enough to include death due to the negligence of a railroad company, and death due to defects in a highway; that in 1853, deaths due to fault on the part of the servants of a railroad under certain conditions was taken out of the purview of the general survival statute, and separate provision made for them which in effect created a distinct cause of action based upon death occurring from causes within its terms; that within this class was brought by the act of 1877 all actions for death due to negligence; but that actions of this latter class are not the only ones that survive. That an action lay for death due to a highway defect was in effect recognized in *Goodsell* v. *Hartford & N. H. R. Co.*, supra, and was tacitly accepted in *Upton* v. *Windham*, supra. The provisions of the statute of 1925 permitting a recovery against the highway commissioner for death due to a defect in or want of a fence or railing upon a highway which it is his duty to maintain are strongly indicative of the legislative understanding that such a cause of action against a town would survive; for by that act the Legislature certainly did not mean to impose a greater liability upon the State for highways within its control than existed as to towns in regard to their highways.

When *Kling* v. *Torello* came before this court, after the adoption of the act of 1903, it was held that the act of 1903 applied to all cases where death was the result of injuries wrongfully inflicted, except as otherwise provided, and that the use of the word "neglect" in the provision concerning the time within which the action must be brought was not sufficient to overcome this intent. In the decision of that case it was stated that

previous to the act of 1903 "liability [for death] was, and always had been, confined to injuries occasioned by negligence;" that the words, in § 1094 of the Revision of 1902, "caused by negligence," in effect limited recovery to actions for death due to such a cause; and that the substitution of the general comprehensive language in the act of 1903 was for the purpose of extending the right of recovery to all cases where death was the result of injuries wrongfully inflicted. It was said (p. 309): "Evidently a change of policy was intended, and one which should complete the gradual development of our law upon that subject from its small beginning in cases of death from defective conditions in highways and bridges through negligence in certain other relations to the point already reached where recovery was permitted in all cases where the death arose from negligent conduct, by including all cases of death however wrongfully caused. Quite likely the not unnatural notion prevailed that there was something unseemly in excepting from liability one who had caused a death intentionally, when one whose offense grew out of want of care was subjected to liability, and that it was time that the existing discrimination in favor of intentional wrongdoers should be removed." In *Burkhardt* v. *Armour & Co.,* 115 Conn. 249, 161 Atl. 385, we had before us an action based upon the breach of an implied warranty, in which damages were sought for death due to that breach. We referred at considerable length to the decision in *Kling* v. *Torello,* particularly the statement that previous to 1903 civil liability for injuries to the person, resulting in death, had been confined to those occasioned by negligence and that the purpose of the act of 1903 was to remove that limitation and the discrimination arising therefrom as regards death due to intentional wrongs; we said of the act of 1913 that the effect was

to restore the limitation to death caused by negligence with an extension so as to permit recovery for death caused by wilful, malicious or felonious acts; and we held that damages for death from breach of warranty were not included.

When we said in *Kling* v. *Torello* that before the act of 1903 "liability [for death] was, and always had been, confined to injuries due to negligence," we were not speaking accurately; not only had there been for many years statutes providing broadly for the survival of actions, but we had in effect recognized that those included death from a highway defect. Nor were we correct when we spoke of the act of 1903 as marking a change of policy, completing the gradual development of law; it really restored the law to the condition in which it was before the Revision of 1902, and had been since 1877. Nor is it strictly so, as we stated in *Burkhardt* v. *Armour & Co.*, supra, that the purpose of the change in 1913 was to restore the limitation to death caused by negligence with the addition of deaths due to wilful, malicious or felonious acts. The purpose of the 1913 act was, accepting the decision of the trial court in *Kling* v. *Torello* that the 1903 act was confined to deaths caused by negligence, to broaden that act to include deaths due to wilful, malicious or felonious acts.

It may be that the scope of § 5987, which is the same as the act of 1913, is to be limited now to the causes of action specified in it. But, whether that is so or not, is not determinative of the case before us. Whether or not an action for death due to a highway defect falls within § 5987, it in any event survives by reason of the provision of § 6030, unless it is in the nature of a civil action upon a penal statute.

In so far as the decision in *Burkhardt* v. *Armour*

*& Co.,* supra, is opposed to this conclusion, it must be overruled.

While it is true that an action under a penal statute does not survive (*Mitchell* v. *Hotchkiss,* 48 Conn. 1, 16) and while in some cases the right given for recovery in case of a defective highway or bridge is referred to as being in the nature of penalty (*Upton* v. *Windham,* 75 Conn. 288, 291, 53 Atl. 660; *Lavigne* v. *New Haven,* 75 Conn. 693, 695, 55 Atl. 569), §§ 1419 and 1420 of the General Statutes are not penal statutes within the meaning of § 6030. "In the municipal law of England and America, the words 'penal' and 'penalty' have been used in various senses. Strictly and primarily, they denote punishment, whether corporal or pecuniary, imposed and enforced by the State, for a crime or offence against its laws. . . . The test whether a law is penal, in the strict and primary sense, is whether the wrong sought to be redressed is a wrong to the public, or a wrong to the individual." *Bankers Trust Co.* v. *Blodgett,* 96 Conn. 361, 366, 114 Atl. 104; *Plumb* v. *Griffin,* 74 Conn. 132, 134, 50 Atl. 1; *Huntington* v. *Attrill,* 146 U. S. 657, 668, 13 Sup. Ct. 224; *Lamphear* v. *Buckingham,* 33 Conn. 237, 246; *Daury* v. *Ferraro,* 108 Conn. 386, 397, 143 Atl. 630; *Atchison, Topeka & Santa Fe Ry. Co.* v. *Nichols,* 264 U. S. 384, 44 Sup. Ct. 353, 354. In *Burr* v. *Plymouth,* 48 Conn. 460, 473, in referring to the defective highway statute, we said: "The object of the statute was not to punish towns for misconduct, but to furnish a remedy to a party injured through a defect in the highway which it is made the duty of the town to keep in repair. And the whole object of the statute was to furnish a means whereby the party injured might obtain compensation for any injury he might receive, without fault on his part, by reason of any defect in the highway." The precise question raised upon this appeal was raised

in *Waterford* v. *Elson,* supra. In that case, Judge Townsend, in writing for the Circuit Court of Appeals for the Second Circuit, after reviewing our decisions, stated (p. 96): "We think that, taken together, they may be fairly interpreted as declaring that every right of action for injuries resulting in death shall survive in favor of the executor or administrator of such deceased person, and that he may recover for such injuries; but that where an action is brought, not for the recovery of compensation for such injuries, but upon a statute which is penal in the sense that its main object is to inflict a punishment upon the offender, such action does not survive." To hold that our statute permitted a recovery in case a party was injured but denied that recovery in case he was killed would be contrary not only to established practice (*Dunn* v. *MacDonald,* 110 Conn. 68, 75, 147 Atl. 26; *Upton* v. *Windham,* supra, 294), but contrary to a common sense of justice. *Murphy* v. *New York & N. H. R. Co.,* 30 Conn. 184, 187.

The appellant makes the further claim that the court did not correctly determine the duty imposed by General Statutes, § 1419, upon the defendant in reference to the maintenance of the fence upon the bridge in question. In *Porpora* v. *New Haven,* 119 Conn. 476, 481, 177 Atl. 531, we stated: "In the main, the purpose of the requirement is to provide against those mischances naturally incident to traffic which may arise due to unforseen circumstances." It was the duty of the defendant to exercise reasonable care to render the highway reasonably safe for public travel. *Horton* v. *MacDonald,* 105 Conn. 356, 363, 135 Atl. 442; *Dunn* v. *MacDonald,* supra, 75; *Upton* v. *Windham,* supra, 294. The statute requiring a sufficient fence is not to be so strictly construed as to hold that it would not have been complied with had the defendant erected at the curb a barrier which would render the roadway

of the bridge reasonably safe for vehicles and a fence at the outer edge of the sidewalk sufficient for the protection of pedestrians; and the conclusion of the trial court that in the absence of such a barrier and with a fence at the edge of the bridge designed solely for the protection of pedestrians, the statute had not been complied with, is sufficient to establish liability under the statute. It is true that a municipality may not be liable upon the ground of a defect in a highway where injury results because of a plan of construction which its officers have adopted in the exercise of the judgment reposed in them; *Hoyt* v. *Danbury,* 69 Conn. 341, 351, 37 Atl. 1051; *Federman* v. *Stamford,* 118 Conn. 427, 429, 172 Atl. 853; but that principle is not applicable under the statute here in question. This statute imposes a duty which may involve the manner of construction of a fence or railing as much as a want of repair after it has been constructed. *Seidel* v. *Woodbury,* 81 Conn. 65, 70, 70 Atl. 58; *Dunn* v. *MacDonald,* supra, 69.

The Legislature, in 1931, prescribed what shall be deemed a sufficient railing or fence upon a trunk line bridge [General Statutes, Cum. Sup. 1935, § 524c subsection (b), appended in footnote (c)]. Proof of com-

(c) Sec. 524c (b) On all state aid or trunk line bridges or bridges under the control of any incorporated bridge district, a railing or fence shall be deemed to be sufficient under the provisions of section 1419 if it is constructed equal to, or better than, and reasonably maintained under, the following specifications: It shall consist of iron or steel pipe posts having an internal diameter of not less than three inches, or posts of equivalent strength made from structural steel shapes to which are attached by means of malleable iron fittings or steel bolts, not less than two horizontal rails composed of iron or steel pipe having an internal diameter of not less than three inches and so located that the top rail is not less than three feet above the adjacent surface of the roadway or sidewalk. The posts shall be spaced at intervals of not more than ten feet apart on centers and shall be rigidly attached to the supporting structure, either by being bolted or riveted to the steel, or by

pliance with this statute raises a conclusive presumption that the defendant has discharged the duty imposed upon it under the provisions of General Statutes, § 1419, and constitutes a complete defense. The fence in the instant case did not meet the specifications of this statute. There was evidence offered by the defendant that even if the fence had been in accordance with this statutory requirement, it would not have stopped the automobile from plunging into the water. The trial court may not have credited this testimony, but in any event the inquiry is without significance. If the defendant had maintained a fence which fully met the statutory requirement, it would have been relieved from liability whether or not the fence was in fact of adequate strength to prevent the automobile from breaking it down; but not having maintained such a fence, the defendant is not relieved from liability by showing that such a fence would not have prevented the automobile from breaking through. The inquiry before the court was not whether a fence such as the statute specifies would have prevented the injury but whether the defendant failed in its duty with regard to the structure actually maintained and such failure was a substantial factor in producing the injury.

There is no error.

In this opinion the other judges concurred.

having their ends embedded at least one foot in the concrete of the parapet or coping. The space between the horizontal rails may be filled by means of a grill composed of steel rods, a wire netting or similar type of construction, provided as a measure of safety and not considered an essential feature in determining the strength of the railing.