Farrow<br>v.<br>Common-<br>wealth Ins<br>Co.

## HENRY WINSOR et al. versus ISRAEL LOMBARD et al

Where in an action brought by two they fail to prove that they are jointly interested in the subject matter of the action, the court may allow the name of the one who is not interested therein, to be struck out.

Where a large number of barrels of mackerel branded, under the inspection laws, as No. 1 and No. 2 mackerel, were sold in the spring, it was *held*, that the description of them as such, in the bill of parcels, was not a warranty that the mackerel were free from rust, at the time of the sale, although it appeared that mackerel affected by rust are not considered as No. 1 and No. 2.

ASSUMPSIT on a warranty alleged to have been given, upon the sale of a quantity of mackerel by the defendants to the plaintiffs. Trial before *Shaw* C. J.

The bill of parcels, which was receipted and was dated May 22d, 1834, set forth, that the plaintiff Winsor bought of the defendants 199 barrels and 69 half barrels No. 1 mackerel, and 376 barrels and 196 half barrels No. 2 mackerel.

The plaintiffs introduced evidence for the purpose of showing, that they were joint purchasers ; but having failed to prove that they were jointly interested in the purchase, their counsel moved for leave to strike out the name of Peleg Churchill, one of the plaintiffs. This was allowed, although objected to by the defendants ; and the trial proceeded as if the action had been originally commenced in the name of Winsor alone. The defendants excepted to this ruling.

There was evidence tending to show, that the fish were damaged, but that the damage proceeded principally from rust ; that this is caused by the leaking out of the pickle, after the fish have been packed, inspected and branded ; and that although fish affected by rust are greatly deteriorated, and are never

marked by the inspector as No. 1 or No. 2, yet that they are not wholly unmerchantable, but are allowed to pass inspection as No. 3. All claim for damage arising from any other cause than rust, was expressly waived by the plaintiff.

The jury were instructed, that, upon a sale by a bill of parcels, like that in this case, although the article sold was one required, by the statutes of the Commonwealth, to be inspected by a public inspector, and although the mackerel were inspected and branded No. 1 and No. 2, in pursuance of the statutes, yet as to damage arising from causes originating after they were so inspected and branded, there was an implied warranty, that the fish were in a good condition, and of a merchantable quality of mackerel of those brands respectively, at the time of the sale ; and that, therefore, if the jury were of opinion, that the fish were damaged by rust, and that this was occasioned by causes originating after the mackerel had been inspected and branded, and further, if according to the known usage of the trade, mackerel affected by rust are not considered as No. 1 or No. 2, though they may pass as No. 3, there was a breach of the implied warranty, for which the plaintiff was entitled to recover damages.

To this instruction the defendants excepted.

There was also evidence tending to show, that the fish in question were packed, inspected and branded in the autumn of 1833 ; that the casks were then well filled with pickle ; and that the sale took place in the following May.

In reference to this evidence, the jury were instructed, that if the damage arose from rust, and the cause of the rust was the want of pickle, commencing after the inspection and before the time of the sale, it was one of those things against which the defendants warranted, even although they believed that the mackerel were, at the time of the inspection, what the brands on the casks indicated, and that for aught they had known to the contrary, these brands had been truly and faithfully applied, and that no alteration or change had happened within their knowledge.

To this instruction the defendants excepted.

If either of these instructions was incorrect, the verdict, which was for the plaintiff, was to be set aside, and a new trial granted.

*Washburn*, for the defendants, to the point, that the amendment was inadmissible, cited *St.* 1784, *c.* 28, § 14 ; Gould on Pl. 274 ; Howe's Practice, 369 ; *Adams* v. *Leland*, 7 Pick. 62 ; *Grozier* v. *Atwood*, 4 Pick. 234 ; *Tuttle* v. *Cooper*, 10 Pick. 283 ; *Redington* v. *Farrar*, 5 Greenl. 379 ; and to the point, that there was no implied warranty, on the part of the defendants, that the mackerel were free from damage at the time of the sale, *Parkinson* v. *Lee*, 2 East, 314 ; *Emerson* v. *Brigham*, 10 Mass. R. 197 ; *Pearson* v. *Purkett*, 15 Mass. R. 264 ; 2 Kent's Comm. 374, 375.

*Dexter* and *English*, for the plaintiffs, to the point, that the amendment was rightly allowed, cited *St.* 1784, *c.* 28, § 14 ; *Penny* v. *Van Cleef*, 1 Hall, (N. York,) 166 ; *Colcord* v. *Swan*, 7 Mass. R. 291 ; *Parsons* v. *Plaisted*, 13 Mass. R. 189 ; *Sherman* v. *Connecticut River Bridge*, 11 Mass. R. 338 ; *Leighton* v. *Leighton*, 1 Mass. R. 433 ; *Minor* v. *Mechanics Bank of Alexandria*, 1 Peters's Sup. Court R. 46 ; *Woodward* v. *Newhall*, 1 Pick. 500 ; *Blood* v. *Harrington*, 8 Pick. 552 ; *Kincaid* v. *Howe*, 10 Mass. R. 203 ; *Rehoboth* v. *Hunt*, 1 Pick. 224 ; *Marlborough* v. *Widmore*, 2 Strange, 890 ; *Bearecroft* v. *Burnham*, 3 Lev. 347 ; *Smith* v. *Fuller*, 1 Ld. Raym. 116 ; *Haynes* v. *Morgan*, 3 Mass. R. 208 ; and as to the point of implied warranty, *Hastings* v. *Lovering*, 2 Pick. 214 ; *Hogins* v. *Plympton*, 11 Pick. 99.

SHAW C. J. delivered the opinion of the Court. The Court are of opinion, that the amendment in striking out the name of one of the plaintiffs, was admissible.

But the main question arises upon the supposed implied warranty, that the fish, at the time of the sale, were merchantable.

This was a sale of inspected fish, and there is nothing in the bill of parcels importing an express warranty. Then the question is, whether there was an implied warranty that the fish were merchantable or free from damage at the time of the sale ? It was ruled at the trial, that there was, for the purpose of receiving the evidence, so that all the questions might be brought before the Court at once ; but upon a revision of the case, the Court are all of opinion, that the action cannot be maintained.

The old rule upon this subject was well settled, that upon a

*Winsor*
*v.*
*Lombard.*

*March 3d*

*April 5th*

sale of goods, if there be no express warranty of the quality of the goods sold, and no actual fraud, by a wilful misrepresentation, the maxim, *caveat emptor*, applies. Without going at large into the doctrine upon this subject, or attempting to reconcile all the cases, which would certainly be very difficult, it may be sufficient to say that, in this Commonwealth, the law has undergone some modification, and it is now held, that without express warranty or actual fraud, every person who sells goods of a certain denomination or description, undertakes as part of his contract, that the thing delivered corresponds to the description, and is in fact an article of the species, kind and quality thus expressed in the contract of sale. *Hastings* v. *Lovering*, 2 Pick. 214 ; *Hogins* v. *Plympton*, 11 Pick. 97.

Indeed this rule seems to be now well settled in England. In an action for a breach of warranty, a vessel was advertised and sold as a copper-fastened vessel, but sold as she lay *with all faults*. It appeared that she was only partially copper-fastened, and not what is known to the trade as a copper-fastened vessel. It was held that, " with all faults," must be understood, all faults which a copper-fastened vessel may have. *Shepherd* v. *Kain*, 5 Barn. & Ald. 240.

The rule being, that upon a sale of goods by a written memorandum or bill of parcels, the vendor undertakes, in the nature of warranting, that the thing sold and delivered is that which is described, this rule applies whether the description be more or less particular and exact in enumerating the qualities of the goods sold.

In applying this rule to the present case, the question is, what did the parties mutually understand by their contract, as it was reduced to writing. It purported to be a sale of certain barrels and half barrels of No. 1, and others of No. 2 mackerel. It is a familiar rule, that every contract is to be construed according to the subject, and with reference to those circumstances which are so notorious, that all persons conversant with the branch of trade, to which the sale relates, must be presumed to be acquainted with them. In the sale of mackerel, both parties must be presumed to be acquainted with the inspection laws, both must be understood to know the season of the year when this species of fish are caught, packed, and

branded, and the species of damage and deterioration, to which
they are liable, and that if mackerel are sold in the spring, they
cannot be of an inspection more recent, than that of the pre-
ceding autumn.   With these circumstances mutually under-
stood, we have no doubt, that when these fish were sold as
No. 1 and 2, the understanding of the parties was, that they
were fish, packed, inspected and branded as of those num-
bers respectively.

It was in evidence, that fish infected with that species of
damage called *rust*, a damage contracted by the leaking out of
the pickle, after the fish have passed under the brand of the in-
spector, may be packed and inspected as No. 3, but that how-
ever good in other respects, they cannot be considered or
marked as No. 1 or 2.   Upon this ground it was contended by
the plaintiffs, that the effect of the contract of the defendants
was, that the mackerel were, at the time of the sale, fish of
the quality known as No. 1 and 2 ; that as they could not be
of those qualities, if they were rusty, it was describing them
by a quality which they did not then possess ; and that this
was a breach of warranty.   But we are all of opinion, that this
would be a forced and erroneous construction of the instru-
ment.   Construed with reference to the subject matter, we
think they must have understood, that the fish were inspected
and branded as No. 1 and No. 2.   In this respect the parties
referred to the brand, and to this extent they acted upon the
faith of it.   Then, as there was no express warranty of their
actual condition, or of the manner in which they were kept
and taken care of, after the inspection, and from that time to
the sale, and as there was no description embracing these par-
ticulars, it must be presumed, that both parties relied upon the
faith of the inspection and brand.   But if the plaintiff would
hold the defendants responsible, as upon a fraud, he must show
that they knew that the brand was falsely applied, or that after
the inspection and before the sale, they had become damaged
by rust ; but no such evidence being given, and no such case
suggested, the action cannot be supported.

It is supposed that a different rule applies to the case of all
provisions from that applicable to other merchandise.   This
matter is well explained by Mr. Justice *Sewall*, in *Emerson*

Winsor
*v.*
Lombard.

v. *Brigham*, 10 Mass. R. 197. In a case of provisions, it will readily be presumed that the vendor intended to represent them as sound and wholesome, because the very offer of articles of food for sale implies this, and it may readily be presumed that a common vendor of articles of food, from the nature of his calling, knows whether they are unwholesome and unsound or not. From the fact of their being bad, therefore, a false and fraudulent representation may readily be presumed. But these reasons do not apply to the case of provisions, packed, inspected, and prepared for exportation in large quantities as merchandise. The vendee does not rely upon the supposed skill or actual knowledge of the vendor, but both rely upon the skill and responsibility of the inspector, as verified by the brand, for all qualities which the brand indicates ; and for damage which may happen afterwards, and against which, therefore, the brand offers no security, the vendee must secure himself by the terms of the contract ; and unless he does so, or unless he is deceived by a false representation of the present and actual condition of the commodity, on which he would have a remedy of a different character, he must be supposed to have been content to take the risk on himself.

*New trial granted.*