CHRISTIAN J. KLING, ADMINISTRATOR, vs. RAFFALE TORELLO.

Third Judicial District, New Haven, June Term, 1913.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

Unlike the provisions of Lord Campbell's Act, and the laws of many States in this country which have followed it, our statute (Public Acts of 1903, Chap. 193, § 4) does not create a new, independent right or cause of action for death, but merely preserves to and continues in the decedent's personal representative a right of action which existed in the decedent at his death. The death resulting from the wrongful act enlarges the ground of recovery by permitting an award of damages in addition to those recoverable for the physical pain and suffering of the decedent during his life, but it has no other effect.

In the present case, which was an action brought by the decedent in his lifetime for a wilful and malicious assault, and was prosecuted after his death by his personal representative, the substitute complaint alleged the pain and suffering endured by the decedent during his life and also his resulting death. *Held* that the complaint did not set forth two independent caus᷈ of action, nor embody inconsistent grounds of damages; nor c᷈ it be regarded as presenting for consideration only the da᷈ ᷈ ᷈ wing from the death; and that

a recovery of damages might be had upon both grounds, or upon either, as the proof might warrant.

Prior to the Act of 1903 the civil liability for injuries to the person resulting in death, was confined to such as were "caused by negligence"; but that limitation was then repealed, and since the passage of that statute a recovery has been permitted in all cases of death by wrongful act, whether intentional or otherwise.

Argued June 3d—decided July 25th, 1913.

ACTION to recover damages for an alleged wilful and malicious assault upon the plaintiff's intestate resulting in his death, brought to the Superior Court in New Haven County where the trial court, *Gager, J.*, directed a verdict for the defendant, from the judgment upon which the plaintiff appealed. *Error and new trial ordered.*

David Kling, the present plaintiff's intestate, brought this action in his lifetime, claiming damages for an alleged malicious and wilful assault resulting in severe injuries and a fractured skull endangering life. Following his death, which occurred two days later, the present plaintiff, as the administrator upon his estate, entered to prosecute the action, and thereafter filed a substituted complaint. This complaint repeated the same allegation of an assault upon the original plaintiff causing a fracture of his skull, and added that, as a consequence thereof, he died. Upon the trial evidence was offered by the plaintiff tending to show the commission of a wilful assault as alleged, and the death of the plaintiff's intestate three days later as its proximate result. Upon the defendant's motion a verdict was directed in his favor.

*Charles J. Martin*, with whom was *William T. Minor*, for the appellant (plaintiff).

*Philip Pond*, for the appellee (defendant).

PRENTICE, C. J.   The record does not disclose the reasons assigned by the court for its direction of a defendant's verdict.   Examination of the transcript of testimony clearly indicates that the reason was not found in the insufficiency of the proof of the alleged assault, and of the intestate's death as a consequence thereof.   Presumably the reason was that which defendant's counsel insists was sufficient, to wit: that as the proof was of injuries resulting in death intentionally inflicted, there could be no recovery under the substituted complaint.   Possibly it was for the reason that the substituted complaint set up an independent cause of action founded upon the death of the intestate, which was unrelated to that contained in the original complaint, and which, therefore, did not accrue until death had occurred, which death, the evidence showed, was subsequent to the commencement of the action.

The first of these reasons, to be adequate, involves the maintenance of two propositions, to wit: (1) that under the substituted complaint there could be no recovery except for the death of the intestate; and (2) that there can be no recovery in this State for death intentionally caused.

The maintenance of the first of these propositions is an essential preliminary to the second.   Upon the assumption that the alleged assault was made as claimed, and that David Kling survived it for three days before death intervened, he, while living, had a right of action for substantial damages.   That right of action, by force of the statute, survived to the plaintiff administrator.   Public Acts of 1903, Chap. 193, p. 149.   Before his death, suit to enforce this right of recovery in him, being the present action, was begun.   The plaintiff was entitled to enter, as he did, to prosecute it to a judgment which should be compensatory for all that the intestate, while living, suffered as the consequence of the injuries

inflicted. *Soule* v. *New York & N. H. R. Co.,* 24 Conn.
575, 577; *Goodsell* v. *Hartford & N. H. R. Co.,* 33 Conn.
51, 55. Unless the amendment of the complaint op-
erated to withdraw this right of action from the con-
sideration of the jury, and to preclude recovery for the
consequences of the assault, which antedated the death
which ensued, the direction of a verdict for the defend-
ant was manifestly unwarranted.

The original and amended complaints differ from each
other in only one particular of possible significance.
That arises from the added allegation that death had
resulted from the injuries inflicted by the defendant.
The former averred that these injuries were so severe
that the plaintiff was in danger of death therefrom; the
latter that death had resulted. What did this change
in allegation signify in the matter of the plaintiff's right
of recovery upon the complaint as it finally stood?

Under Lord Campbell's Act, 9 and 10 Victoria, and
those statutes in this country which have followed its
general lines, a right of action is given where death re-
sults from injuries, which is entirely independent of and
unrelated to any which the deceased might have had
in life. It is not a continuation of, or incidental to, any
right of action existing in favor of anybody prior to the
death, and attaches itself to no such right. It is a new
thing which springs into existence upon the death.
It is independent of every other right of action, and
different in its theory, quality and object from every
other. It does not rest upon the basis of an injury suf-
fered by the deceased's estate; its foundation is the loss
sustained by certain persons designated as beneficiaries
of the recovery. *American R. Co.* v. *Didricksen,* 227
U. S. 145, 149, 33 Sup. Ct. Rep. 224; *Michigan Central
R. Co.* v. *Vreeland,* 227 U. S. 59, 70, 33 Sup. Ct. Rep.
192; *Gulf, C. & S. F. Ry. Co.* v. *McGinnis,* 228 U. S.
173, 175, 33 Sup. Ct. Rep. 426. "A totally new action

is given against the persons who would have been responsible to the deceased if the deceased had lived; an action which . . . is new in its species, new in its quality, new in its principle, in every way new." *Seward* v. *Vera Cruz*, L. R. 10 App. Cas. 59, 70; *Blake* v. *Midland Ry. Co.*, 18 Q. B. (Ad. & E. N. S.) 93, 109. In *Michigan Central R. Co.* v. *Vreeland*, 227 U. S. 59, 68, 33 Sup. Ct. Rep. 192, the court, speaking of the Federal Employers Liability Act of 1908, similar in its provisions upon the subject now under discussion to those of Lord Campbell's Act, said that the right of action which it created was independent of any which the decedent had, proceeded on altogether different principles, and permitted the inclusion in the judgment of no damages which the decedent might have recovered if he had survived. In the jurisdictions where these statutes exist it would necessarily follow that the substitution of a complaint counting upon the death, for one averring sufferings during life only, would be the desertion of one cause of action for a radically different one, and the presentation of a right of action which in no way could be made to comprehend, as a basis of recovery, consequences to the deceased during his lifetime.

The situation is very different in this State. The right of recovery for the death which our statute gives is not one which is independent of or unrelated to the right of action which was in the deceased at his death. Our statute is framed upon an entirely different theory, and effectuates quite a different policy. *Goodsell* v. *Hartford & N. H. R. Co.*, 33 Conn. 51, 55. The right of action which the executor or administrator is permitted to pursue is not one which springs from the death. It is one which comes to the representative by survival. The right of recovery for the death is as for one of the consequences of the wrong inflicted upon the decedent. The amount of recovery is determined from the stand-

point of the deceased, and not from that of the statutory beneficiaries. Its measure, within the statutory limitation, is the value of life to him whose life has been cut off. *Broughel* v. *Southern New Eng. Tel. Co.*, 73 Conn. 614, 620, 48 Atl. 751. When one, as the result of injuries inflicted, suffers during life, and death later results, there are not two independent rights of action. There is but one liability, and that is for all the consequences of the wrongful act including the death. *Broughel* v. *Southern New Eng. Tel. Co.*, 73 Conn. 614, 617, 48 Atl. 751. There cannot be two recoveries. *Goodsell* v. *Hartford & N. H. R. Co.*, 33 Conn. 51, 55; *McElligott* v. *Randolph*, 61 Conn. 157, 159, 22 Atl. 1094. If the injured man survives to recover, he recovers once for all; if he dies before recovery his executor or administrator stands in his place. The survival statute operates to transfer to the representative the right of action which the deceased had for his sufferings and disability during life, while the death enlarges his right of recovery by permitting an award of additional damages for the death itself as one of the harmful results of the wrongful act. The court is by the statute, as it was not by the common law, authorized to take that event into consideration, as it might any other physical development consequent upon the injuries, whether occurring before or after action brought. The new event is not regarded as one which creates a cause of action, but one which has a bearing upon the award of damages. Instantaneous death may of itself bring into existence a right of action which is confined in the matter of recovery to the event of death. *Murphy* v. *New York & N. H. R. Co.*, 30 Conn. 184, 188. But if the death is not instantaneous, the right of action is, not so confined. It reaches back to the antecedent harmful results, and the death is, by force of the statute, made one of the incidents in the story of results which is material in a determination of

the amount of recovery to which the representative is entitled. *Broughel* v. *Southern New Eng. Tel. Co.*, 73 Conn. 614, 617, 48 Atl. 751.

Our long-continued practice has conformed to this view. Repeatedly have judgments been rendered where there was a single recovery for the death and antecedent sufferings. The utterances of this court from early days have uniformly sanctioned this procedure. *Soule* v. *New York & N. H. R. Co.*, 24 Conn. 575, 577; *Murphy* v. *New York & N. H. R. Co.*, 29 Conn. 496, 499. The language of our statute comports with this view, and would not be in harmony with any other. Public Acts of 1903, Chap. 193, p. 149.

A complaint which avers both suffering during the life of the decedent and his resulting death does not, therefore, embody inharmonious or inconsistent allegations of damage. It specifies damages which flow from a common source, and which our law regards as having such source. In a given case the field of damages recoverable may include both sorts of damage or only one. A complaint which avers both cannot, therefore, be regarded as presenting for consideration only the damages flowing from the death, and recovery is not precluded for the damages suffered during life. In such case recovery may properly be had for both or either cause, as the proof may justify. Accordingly, in the present case, it was competent for the plaintiff to recover for the intestate's pain, suffering and disability during his period of life following the assault, even if he failed to recover for the death. This was distinctly recognized in the earliest of our cases. *Soule* v. *New York & N. H. R. Co.*, 24 Conn. 575, 577; *Murphy* v. *New York & N. H. R. Co.*, 29 Conn. 496, 499.

We have next to consider whether or not he was entitled to recover for the intestate's death, it having been caused, as the evidence showed, intentionally.

It is unnecessary to trace the development of our statutes imposing a civil liability for injuries to the person resulting in death. A partial outline of their history is given in *Broughel* v. *Southern New Eng. Tel. Co.*, 73 Conn. 614, 617, 48 Atl. 751. Prior to the enactment of chapter 193 of the Public Acts of 1903, that liability was, and always had been, confined to injuries occasioned by negligence. The statute then in force provided that the executor or administrator of any person whose death was caused by negligence, might recover of the party legally in fault just damages, not exceeding $5,000. General Statutes, § 1094. Chapter 193 of the Public Acts of 1903, p. 149, which is the statute now in force, except as the maximum of recovery was changed in 1911, omits the limiting words "caused by negligence," and provides that "in all actions surviving to or brought by an executor or administrator for injuries resulting in death, whether instantaneous or otherwise, such executor or administrator may recover from the party legally in fault for such injuries just damages not exceeding five thousand dollars."

We must believe that this omission of the pre-existing limitation to injuries caused by negligence, and the substitution of general comprehensive language was intentional, and with the purpose of extending the right of recovery to all cases where death was the result of injuries wrongfully inflicted. Otherwise it is difficult to conceive of a sufficient reason for the enactment of this chapter of the Public Acts of 1903. Possibly there was a desire to bring together into close relation the provisions touching the survival of actions and those concerning the right of recovery in cases of death, which had been separated in the Revision of 1902 after having been grouped in successive sections in that of 1888, §§ 1007–1009. But that desire would scarcely be sufficient to prompt the enactment of the legislation of

1903, and, if so, certainly not sufficient to explain the radical change in language which was made in dealing with the subject of recovery for injuries resulting in death. Evidently a change of policy was intended, and one which should complete the gradual development of our law upon that subject from its small beginning in cases of death from defective conditions in highways and bridges through negligence in certain other relations to the point already reached where recovery was permitted in all cases where the death arose from negligent conduct, by including all cases of death however wrongfully caused. Quite likely the not unnatural notion prevailed that there was something unseemly in excepting from liability one who had caused a death intentionally, when one whose offense grew out of want of care was subjected to liability, and that it was time that the existing discrimination in favor of intentional wrong-doers should be removed.

The language of the Act would leave no ground for question that the intent was as indicated were it not that it is provided in the latter part of the section in question that the action must be brought "within one year from the neglect complained of." The Act of 1903, unfortunately, is not well drafted. Its shortcomings appear in other of its provisions, and the presence in it of this phrase is apparently the result of a careless appropriation of the language of former statutes without an appreciation of its inappropriateness to the new conditions created. Judging from the similarity of language, the draftsman had before him the Act of 1877, chapter 78, p. 191, and borrowed from its phraseology, including the precise language used by him prescribing the time within which action must be brought. Identically the same language appears in § 1009 of the Revision of 1888, and the thoughtless transfer may have been from that source. However

that may be, the phraseology of the time limitation provision cannot be fairly regarded as of such consequence as to wrest the comprehensive language of the main provision, defining the right of action; from its plain meaning, and to control its construction. We are satisfied that the statute authorizes recovery for injuries intentionally inflicted resulting in death.

Our discussion, already had, of the theory upon which our law proceeds in authorizing the recovery for death where it results from personal injuries received, and the nature of that recovery in its relation to the original wrongful act and to the consequences of such act to the injured person during life, renders it unnecessary to further consider the second reason which we have suggested as having by possibility induced the court to direct the verdict. The right of action which was being pursued under the substituted complaint had accrued when the action was begun, and there was no prosecution of a right of action which did not accrue until death ensued.

There is error and a new trial is ordered.

In this opinion the other judges concurred.