BERTHA E. BURKHARDT, ADMINISTRATRIX, (ESTATE OF PAULINE I. BUSCH) *vs.* ARMOUR AND COMPANY ET AL.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued April 7th—decided July 5th, 1932.

*Thomas F. Noone* and *William S. Locke,* with whom was *Ralph O. Wells,* for the appellant—appellee (plaintiff).

*James W. Carpenter,* with whom was *Thomas S. Whitman,* for the appellants—appellees (defendants).

HINMAN, J. The complaint alleged in substance that the plaintiff's decedent purchased from the defendant The Great Altantic and Pacific Tea Company, hereinafter referred to as the Tea Company, at its

Rockville store, a can of corned beef prepared and packed by the defendant Armour & Company, which by reason of negligence of the latter contained, embedded and concealed in the beef, a dangerous piece of tin; also that the defendants in selling the same represented and warranted it safe and fit for consumption; that the decedent, although exercising due care, swallowed the piece of tin with results, detailed in the complaint, which caused her pain and suffering and expense and ultimately her death. The answers raised the general issue. The trial court held the defendant Tea Company not negligent but liable for breach of warranty, and Armour & Company not accountable upon the warranty—on account of lack of privity of contract with the decedent—but liable for negligence. Details of the conclusions reached which are material on these appeals will be mentioned hereafter.

The finding is that the decedent, Pauline I. Busch, was about seventy years of age, in good health, and owned and kept her own home, her two daughters, one the plaintiff herein and the other Mrs. Hirth, boarding with her. On April 1st, 1930, she requested Mrs. Hirth to purchase for her a can of corned beef for use in preparing the evening meal. Mrs. Hirth went to the store of the defendant Tea Company and asked the manager for a small can of corned beef without specifying any particular brand. The manager handed her a can marked "Armour's Veribest Products Corned Beef" which Mrs. Hirth paid for and took home to her mother. The can was sealed and contained a piece of tin about three quarters of an inch square so embedded in the beef and the gelatinous substance which forms thereon that a person opening the can with due care would not notice its presence. The piece of tin had been placed by the packer at or near the bottom of the can to stop the vent hole through which the

vacuum is applied to the interior of the can just before sealing, so that particles of beef will not be sucked out.

The bottom of the can was larger than the top and in the process of removing the meat in the natural way the piece of tin would come out at the bottom of the meat and not be visible. Mrs. Busch opened the can, mixed a part of the contents with potatoes to make hash and placed the mixture in a frying pan on the stove. The loose piece of tin was in the part of the contents so used, but she did not notice it or know of its presence. After cooking the hash for some time, Mrs. Busch tested it by tasting, and as she swallowed it felt something sharp in her throat. She immediately went to a doctor and he extracted from her oesophagus the square piece of tin. It later developed that the tin, having sharp corners, had lacerated the oesophagus and an infection developed which ultimately resulted in her death on April 19th, 1930. Other facts found, modified to such extent as the defendants are entitled under their assignments for correction of the finding, are stated later in this opinion.

The plaintiff assigns error in the conclusion reached by the trial court that "At common law the death of a person was never an element of damage, and inasmuch as no statute creates the right to recover damages for death resulting from a breach of implied warranty, no damages could be assessed in this case against the . . . Tea Company on account of the death of the plaintiff's decedent. The measure of her damages against said defendant for breach of the implied warranty of fitness was therefore her expenses for medical attendance and her pain and suffering down to the time of her death." The question presented is whether our statutes so alter the common-law rule as to render death an element of damage recoverable

in this action as against the defendant Tea Company. The statutes relied on as producing this result are now §§ 6030 and 5987 of the General Statutes, 1930, which are quoted in a footnote. We do not deem it necessary to repeat or review the discussions of the general development and effect of these statutes appearing in the earlier cases. *Kling* v. *Torello,* 87 Conn. 301, 305, 87 Atl. 987; *Broughel* v. *Southern New England Telephone Co.,* 73 Conn. 614, 620, 48 Atl. 751; *Goodsell* v. *Hartford & N. H. R. Co.,* 33 Conn. 51, 55; *Murphy* v. *New York & N. H. R. Co.,* 30 Conn. 184; *Mezzi* v.

Sec. 6030. SURVIVAL OF ACTIONS AND CAUSES OF ACTION. No cause or right of action shall be lost or destroyed by the death of any person, but it shall survive in favor of or against the executor or administrator of such deceased person. No civil action or proceeding shall abate by reason of the death of any party thereto, but it may be continued by or against the executor or administrator of such decedent. In case of the death of any party plaintiff, his executor or administrator may enter within six months thereafter and prosecute the suit in the same manner as his testator or intestate might have done if he had lived; and, in case of the death of any party defendant, the plaintiff may have a writ of scire facias against such decedent's executor or administrator to show cause why judgment should not be rendered against him, which shall be served at least twelve days before the day upon which it is returnable, and upon its return the action may proceed. The provisions of this section shall not apply to any cause or right of action or to any civil action or proceeding the purpose or object of which is defeated or rendered useless by the death of any party thereto; nor to any civil action or proceeding whose prosecution or defense shall depend upon the continued existence of the persons who are plaintiffs or defendants; nor to any civil action upon a penal statute.

Sec. 5987. ACTIONS FOR INJURIES RESULTING IN DEATH; DAMAGES. In any action surviving to or brought by an executor or administrator for injuries resulting in death, whether instantaneous or otherwise, or whether caused by the negligence of the defendant or by his wilful, malicious or felonious act, such executor or administrator may recover from the party legally at fault for such injuries just damages not exceeding ten thousand dollars, provided no action shall be brought under this section but within one year from the neglect complained of or from the commission of such wilful, malicious or felonious act. All damages recovered under this section shall be distributed as directed in section 4983.

*Taylor,* 99 Conn. 1, 7, 120 Atl. 871. It was pointed out in *Kling* v. *Torello* (1913) *supra,* p. 308, that prior to 1903 the civil liability imposed by statute for injuries to the person resulting in death had been confined to those occasioned by negligence. Section 1094 of the General Statutes, 1902, provided that "The executor or administrator of any person whose death shall have been caused by negligence, may recover of the party legally in fault, just damages. . . ." Chapter 193 of the Public Acts of 1903 omitted the limiting words "caused by negligence" and provided for recovery in "all actions surviving to or brought by an executor or administrator for injuries resulting in death, whether instantaneous or otherwise." In *Kling* v. *Torello* we held (p. 309) that the purpose of the omission of the pre-existing limitation to injuries caused by negligence, and the substitution of the general comprehensive language just quoted, was to remove the discrimination arising from the previous limitation of recovery under the statute to death resulting from negligent conduct only, to the exclusion of intentional wrongs—such as the alleged wilful and malicious assault involved in that case—and (p. 310) that the statute as amended authorized recovery for injuries intentionally inflicted which resulted in death. Practically coincident with the presentation of *Kling* v. *Torello* in this court and apparently motivated by the situation presented or illustrated by that case, the General Assembly adopted, in substitution for the Act of 1903, Chapter 148 of the Public Acts of 1913, which still remains in effect as § 5987 of the General Statutes. The express terms of this Act correspond in substance with the effect accorded the 1903 law by *Kling* v. *Torello* by including in the fatal injuries for which recovery might be had thereunder those caused not only by negligence but also by "wilful, malicious,

or felonious act." It is unnecessary to inquire whether, if the statute had remained, as in the 1903 Act, without this specification of the causes of injuries resulting in death, its scope could be regarded as embracing and permitting recovery for breach of implied warranty, for it is clear that the effect of the 1913 Act was to restore the limitation which had been removed in 1903, although extending it so as to permit recovery for death caused by wilful, malicious, or felonious act as well as by negligence. Damages for the death were properly excluded from the recovery allowed from the defendant Tea Company for breach of implied warranty.

The plaintiff was held to be entitled to recover from the defendant Tea Company for breach of warranty and from the defendant Armour & Company for negligence. Recovery as to both was for the same injuries, but the measure of damages was different in that the death was an allowable element as against the latter but not as to the former, and the award of $2250 for pain and suffering and medical expenses, for which judgment was rendered against the Tea Company, was augmented as to Armour & Company by $1250 damages for the death, a total of $3500. The trial court ruled that "the collection of either of said amounts from either of said parties must be in full satisfaction for the injuries sustained by the plaintiff's decedent" and the judgment provided, accordingly, that the plaintiff "shall not collect both of said amounts, and if she collects from one of said defendants the amount of the judgment rendered against it, then that shall be in full satisfaction of this judgment." In this the plaintiff claims error. She concedes, correctly, that she is not entitled to receive double compensation for the same injuries by collecting both judgments in full, but asserts that she is entitled to

collect full compensation, and should not be deprived of the benefit of the damages for death through payment or tender of the smaller judgment against the Tea Company which did not include this element.

The general rule is that there can be but one satisfaction of damages, and where judgments are rendered against different persons for the same cause of action, payment of one is a satisfaction of all. *Ayer* v. *Ashmead,* 31 Conn. 447, 83 Am. D. 154; 34 C. J. p. 722. Ordinarily this applies although the judgments differ in amount, and satisfaction of the smaller precludes collection of the larger, except as to costs. It has been held, however, that where a plaintiff has two or more such judgments he may elect which one he will enforce and, therefore, of which he will receive satisfaction. 2 Freeman, Judgments (5th Ed.) § 1126; 34 C. J. p. 722. The present situation is unusual in that the single count of the complaint was construed and treated on the trial as setting up causes of action both of negligence and of breach of warranty as against both defendants, and recovery was allowed for the same injuries against one defendant—Armour & Company—on the ground of negligence, and against the other—the Tea Company—for breach of warranty. Therefore, we do not regard as applicable, in strictness, the general rule as to judgments for the same cause of action and feel at liberty to hold, without violating or impairing that rule, the wisdom and soundness of which is undoubted, that the peculiar circumstances of this case warrant, as reason and justice appear to dictate, that the judgment be so amended that payment by the Tea Company of the damages against it, if made, shall reduce the damages collectible under the judgment against Armour & Company to the extent of the amount of such payment. *Sheldon* v. *Kibbe,* 3 Conn. 214, 221; *Lovejoy* v. *Murray,* 70 U. S. (3 Wall.)

1, 18 L. Ed. 129; *Woods* v. *Pangburn*, 75 N. Y. 495; *Guerry* v. *Perryman*, 2 Ga. 63; *Lumpkin* v. *Ferguson*, 10 Rich. Law (S. C.) 424.

The major contention of the Tea Company, upon its appeal, is that the principle of implied warranty upon which judgment was rendered against it is not applicable because the corned beef was in a sealed can. As to sales of goods in general an implied warranty attaches whenever the facts satisfy the conditions of that provision of our Sales Act which is now subdivision (1) of § 4635 of the General Statutes: "When the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment, whether he be the grower or manufacturer or not, there is an implied warranty that the goods shall be reasonably fit for such purpose." This enactment follows and does not change, in any respect pertinent to this case, the common law governing the same subject. *Merrill* v. *Hodson*, 88 Conn. 314, 319, 91 Atl. 533. The protection which such a warranty affords is particularly important and salutary as applied to food purchased by the consumer. One condition essential to bring the warranty into operation is that the buyer must expressly or impliedly acquaint the seller with the purpose for which the commodity is required, but there is no question that the circumstances in the present case were sufficient to establish that the purpose for which the beef was purchased manifestly was for human consumption as food. The principal objection urged by this appellant is that the existence of the further requirement—that it shall appear that the buyer relied on the seller's skill or judgment—is precluded by the fact that the food product was packed in a sealed can affording the seller no practicable op-

portunity for inspection or knowledge of any defect therein, and that therefore no inference can be drawn of reliance by the buyer upon the seller's skill or judgment beyond, possibly, that exercised in the selection of the source from which the latter obtained the goods.

There is practical unanimity of modern authority that, both under common law and the Sales Act, upon the sale of food to be immediately put to domestic uses, there is, as between dealer and the buyer-consumer, an implied warranty of wholesomeness and fitness to be eaten, including freedom from foreign substances which may be injurious to the consumer. *Farrell* v. *Manhattan Market Co.,* 198 Mass. 271, 84 N. E. 481, 15 L. R. A. (N. S.) 884; *Race* v. *Krum,* 222 N. Y. 410, 118 N. E. 853; *Cook* v. *Darling,* 160 Mich. 475, 125 N. W. 411; *Parks* v. *C. C. Yost Pie Co.,* 93 Kan. 334, 144 Pac. 202; note L. R. A. 1917F, 472; *Nock* v. *Coca Cola Bottling Works,* 102 Pa. Sup. 515, 156 Atl. 537. Recognition of an exception, as to canned goods, from this general rule, where given, is largely based upon assumptions that as to such goods the seller has no means of knowledge, opportunities for inspection, or other sources of information which are not shared by the purchaser, and that the latter from the nature of the transaction must know this and therefore cannot be said to rely on skill or knowledge of the seller founded upon superior information or opportunity for obtaining it. *Bigelow* v. *Maine Central R. Co.,* 110 Me. 105, 85 Atl. 396, 43 L. R. A. (N. S.) 627 (unwholesome asparagus served from a can); *Scruggins* v. *Jones,* 207 Ky. 636, 269 S. W. 743 (tainted canned shrimp); *Aronowitz* v. *F. W. Woolworth Co.,* 236 N. Y. Sup. 133 (canned tuna fish); *Julian* v. *Laubenberger,* 38 N. Y. Sup. 1052 (canned salmon). As to this consideration, Williston on Sales (2d Ed.) § 242

observes: "This same argument, however, may be made in regard to any implied warranty, not only of food, but of other articles where the seller. could not discover the defect. Accordingly, if canned goods are to be made an exception to the general rule governing sales of food, the whole law of implied warranty should be revised and placed on the basis of negligence. But the general principle of the common law is opposed to this, and certainly if a dealer is ever to be made liable for injuries caused by defective goods where he has been guilty of no fault, the reasons are stronger for holding him liable for selling defective food than in any other kind of sale. According to the weight of authority, presumably for these reasons, a dealer is liable for selling such food even though in cans of a reputable brand."

The position taken by most of those cases which deny the exception is well expressed in *Ward* v. *Great Atlantic & Pacific Tea Co.* (1918) 231 Mass. 90, 120 N. E. 225, 5 A. L. R. 242, which involved a pebble in canned beans, as follows (p. 94): "There appears to us to be no sound reason for engrafting an exception on the general rule, because the subject of the sale is canned goods, not open to the immediate inspection of the dealer, who is not the manufacturer, any more than of the buyer. It doubtless still remains true that the dealer is in a better position to know and ascertain the reliability and responsibility of the manufacturer than is the retail purchaser. But the principle . . . is a general one. It has long been established. Simply because it may work apparent hardship in certain instances is no reason for changing it to fit particular cases. It is a salutary principle. It has become wrought into the fabric of the law as the result of long experience. It may be assumed that the affairs of mankind have become adjusted to it. It has recently

been adopted by the legislature in codifying the law as to sales. It imposes liability in the absence of an express contract between the parties governing the subject. It places responsibility upon the party to the contract best able to protect himself against original wrong of this kind, and to recoup himself in case of loss, because he knows or comes in touch with the manufacturer. In the case at bar the plaintiff had no means of ascertaining the manufacturer from inspection of the goods bought. The retail purchaser in cases of this sort ordinarily would be at some disadvantage if his only remedy were against the manufacturer." The opinion in that case also distinguished *Winsor* v. *Lombard,* 35 Mass. (18 Pick.) 57, upon which much reliance was placed in *Bigelow* v. *Maine Central R. Co., supra.* See also *Ireland* v. *Louis K. Liggett Co.,* 243 Mass. 243, 137 N. E. 371.

In *Chapman* v. *Roggenkamp* (1913) 182 Ill. App. 117, involving canned peas, the court adhered to the general rule, holding that public safety demands that in all sales of provisions by a retail dealer for immediate domestic use the implied warranty of fitness should apply, and this was followed in *Sloan* v. *F. W. Woolworth Co.* (1915) 193 Ill. App. 620. The New York Court of Appeals in *Rinaldi* v. *Mohican Co.* (1918) 225 N. Y. 70, 121 N. E. 471, left open the question whether an inference of reliance on seller's skill and judgment would be drawn upon a sale of food in sealed containers. In *Ryan* v. *Progressive Grocery Stores, Inc.* (1931) 255 N. Y. 388, 175 N. E. 105, an action for a breach of warranty of a loaf of bread, wrapped in a sealed package, which contained a pin, recovery was denied because, as the buyer asked for a particular brand of bread, it was held that the choice was determined by him instead of through reliance on the judgment of the seller. The court,

however, cited the Massachusetts cases, *supra,* also *Lieberman* v. *Sheffield Farms-Slawson-Decker Co., Inc.,* 191 N. Y. Sup. 593 (bottled milk), as holding that even as to sealed containers an implied warranty ensues if the seller's judgment has been trusted for the selection of the brand or make, and observes, "We assume for present purposes that so the rule should be declared."

In *Griffin* v. *James Butler Grocery Co.* (1931) 108 N. J. L. 92, 156 Atl. 636 (canned peaches), the New Jersey Court of Errors and Appeals refused to draw a distinction between food sold in bulk or by measure and that in sealed containers, emphasizing the consideration that the seller can recoup from the manufacturer while in that regard the retail purchaser is greatly at a disadvantage, and noting that "of this, the case at bar is an apt illustration, as the cannery was in California, and the purchase was made in . . . New Jersey." A still more extreme illustration is afforded by the instant case, the actual packer and the first purchaser both being located in Argentine, the distributor in Chicago, and the retailer in Connecticut. *Los Angeles Olive Growers Asso.* v. *Pacific Grocery Co.* (1922) 119 Wash. 293, 205 Pac. 375, and *Crocker Wholesale Grocer Co.* v. *Evans* (1925, Mo. App.) 272 S. W. 1017, held that in a sale of canned tomatoes by a manufacturer to a dealer there is an implied warranty of fitness for human consumption.

The decisions of the English courts indicate that under the Sale of Goods Act, which does not differ from our statute in any respect material to the present inquiry, no distinction is to be drawn between canned goods and those open to inspection, so far as concerns the implied warranty of fitness in sales of food to the consumer. In *Frost* v. *Aylesbury Dairy Co.,* L. R. (1905) 1 K. B. 608, the article sold was milk containing

typhoid germs, as a result of which the plaintiff's wife contracted typhoid and died. The court held the seller liable even though he could not, by the exercise of due care, have discovered this defect, Collins, M. R., saying (p. 612): "The point mainly pressed upon us on behalf of the defendants was that the buyer could not be said to rely on the skill or judgment of the sellers in a case in which no amount of skill or judgment would enable them to find out the defect in the milk supplied. That amounts to a contention that a seller of goods cannot be answerable for a latent defect in them unless upon a special contract to that effect. . . . The matter was specifically dealt with in the considered judgment of the Court of Appeals in *Randall* v. *Newson* [L. R. 2 Q. B. D. 102], where it was held that on the sale of an article for a specific purpose there is a warranty by the vendor that it is reasonably fit for that purpose, and that there is no exception as to latent undiscoverable defects."

The further claim advanced by this appellant, that the square piece of tin which injured the plaintiff's decedent is not to be regarded as a foreign substance in the food product within the scope of the implied warranty but, instead, as an accessory of the can and part of the packing process, comparable to the key attached to the can to facilitate opening it, or the can itself, is so clearly fallacious as not to require discussion. The analogy is, rather, to the pebble in the beans in the *Ward* case and the pin in the bread in the *Ryan* case. The causal connection between the presence of the tin in the meat, its lodgment in the throat of the decedent, and her consequent injuries, is obvious upon the facts set forth in the finding. The suggestion that the damages are to be limited in amount to the difference between the value of the goods delivered and that which they would have had if they had

complied with the warranty, is answered with appropriate brevity by Judge Cardozo in the *Ryan* case, *supra* (p. 395): "The rule is not so stubborn. . . . The measure is more liberal where special circumstances are present with proof of special damage." See also § 4689 of the General Statutes; 2 Williston on Sales (2d Ed.) §§ 614, 614a.

The assertion principally pressed by the appellant Armour & Company is that because it obtained the can and contents from a reputable packer and independent contractor it cannot be held responsible for negligence, if any, of such packer. The can in question had been packed by an Argentine corporation under an agreement with this defendant, was sold by the packer to a second Argentine corporation, rather significantly entitled "Frigorifico Armour de la Plata," and by the latter to Armour & Company, an Illinois corporation. It bore, only, a label which conspicuously displayed on each of the four sides of the can "Armour Veribest Products" ("Veribest" being an exclusive trade-mark of Armour & Company) and in small type the words "Armour & Company, Foreign Distributors;" it did not give the name of the actual packer. The trial court found, justifiably, that the ordinary reasonable person reading this label would have inferred that Armour & Company was the packer of the product. These facts are sufficient to render applicable the rule expressed by the American Law Institute in its Restatement of the Law of Torts (§ 270, Tentative Draft No. 5) as follows: "One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer." By putting a chattel out as his own product he induces reliance upon his care in making it; therefore, he is liable if, because of some negligence in its fabrication or through lack of proper inspection

during the process of manufacture, the article is in a dangerously defective condition which he could not discover after it was delivered to him. The rule applies only where the chattel is so put out as to lead those who use it to believe that it is the product of him who puts it out, but the fact that it is sold under the name of the person selling it may be sufficient to induce such a belief. Comment to § 270, 5th Tentative Draft, p. 75; *Thornhill* v. *Carpenter-Morton Co.*, 220 Mass. 593, 597, 108 N. E. 474. The plaintiff in that case was injured by an explosion of floor stain purchased of the defendant and labeled as manufactured by it, but which it afterward appeared in fact was manufactured by a third party. In the case before us there is present the additional element of the use and display of the Armour trade-mark, the ordinary significance of which is that the owner of the mark stands sponsor for the goods so marked and vouches for the product as his own. *Fleetwood* v. *Swift & Co.*, 27 Ga. App. 502, 108 S. E. 909, 911; Nims, Unfair Competition & Trade-Marks (3d Ed.) § 193. The principle of estoppel appears to afford the main basis and reason for the liability imposed upon a party putting out as his own product goods produced by another, but it seems that additional justification may be found in the consideration, already mentioned as applicable on the question of warranty, that the ultimate purchaser has no available means of ascertaining the actual manufacturer or packer. *Ward* v. *Great Atlantic & Pacific Tea Co.*, *supra*. Be that as it may, we find no adequate reason either for refusing to accept the rule or for holding it inapplicable.

The finding states, and withstands the effort to correct it, that the standard practice is to use, for stopping the venthole in cans, a round piece of tin about the size of a half-dollar, which is so large that it would not

normally be swallowed and, if it were, would not be likely to work injury owing to the absence of sharp points, and that the smaller square piece here used was substantially more dangerous because of its size and four sharp corners. The conclusion that the use of the latter under the circumstances and in the manner disclosed by the finding constituted negligence cannot be held by us as so lacking in factual support as not to be sustainable. The decedent's freedom from contributory negligence is also sufficiently supported by the facts found and these, in turn, are warranted by the evidence and legitimate inferences therefrom.

The complaint, supplemented by the more specific statement, alleged representation, by the label, that the product was one prepared and packed by the defendant Armour & Company, also negligence of that defendant or its agent in preparing the same. The facts alleged were all that could reasonably be expected to be within the knowledge of or available to the plaintiff, were appropriate to resort to the rule under discussion and significant of an intention to do so, and, especially in the absence of question raised more seasonably than by motion in arrest of judgment, sufficient to warrant such resort and to support the judgment. The other assignments develop no error or occasion for discussion.

There is no error on either defendant's appeal; on the plaintiff's appeal there is error in the form of the judgment only, and the case is remanded to the Superior Court with instructions to amend the judgment in accordance with this opinion.

In this opinion the other judges concurred.