JOSEPH GRECO, as Administrator, etc., of MARY GRECO, Plaintiff, *v.* S. S. KRESGE COMPANY, Defendant.

Supreme Court, Trial Term, Kings County, January 26, 1937.

*George I. Swetlow,* for the plaintiff.

*Robert M. McCormick,* for the defendant.

MACCRATE, J. Motion granted. Plaintiff as an administrator sues for himself and the next of kin of his deceased wife who, it is claimed, purchased food and died as the result of eating the same. The defendant obtained at Trial Term a dismissal of the complaint on the opening of plaintiff's counsel which disclaimed the right to recover for negligence and asserted that plaintiff relied upon a breach of warranty. Plaintiff asks that the dismissal be vacated.

While the plaintiff here calls his action one for breach of warranty, it in fact is not an action for breach of warranty. If there be any right of action it is one created by statute because of the death of a person who suffered personal injury and could have sued for breach of warranty. In suing, the administrator acts for the next of kin. It is needless to cite the cases which hold that the right of the next of kin is purely a creature of statute. That it is not identical with cause of action that the deceased might

have had can be seen from recent enactments which permit the survival of causes of action heretofore held to die with the person. (Dec. Est. Law, §§ 118 *et seq.*) These sections are not applicable to the present case because they were enacted after the death involved here. They point, however, the distinction between causes of action which the decedent possessed and those created by section 130. Here concededly the deceased could have sued for breach of warranty and plaintiff represents the persons favored by the section. The primary question, therefore, is: Does section 130 of the Decedent Estate Law give a cause of action where death has resulted from a breach of warranty?

Chapter 93, 9 & 10 Vict. (1846), is the source of most statutes giving rights of action for death to next of kin. That statute is headed: " An Act for compensating the Families of Persons killed by Accidents." An English case (*Franklin* v. *South Eastern R. Co.*, 3 H. & N. 211, 214) states: " The statute does not in terms say on what principle the action it gives is to be maintainable, nor on what principle the damages are to be assessed; and the only way to ascertain what it does, is to show what it does not, mean." Baron BRAMWELL could not conceal his scorn for the draftsman of an act which had to be interpreted by what it did not say, rather than by what it did say. (*Osborn* v. *Gillett*, L. R. [1872] 8 Ex. 88.) More complimentary is *Green* v. *Hudson River R. R. Co.* (16 How. Pr. 230, 235). The prevailing opinions in *Osborn* v. *Gillett* (*supra*) recognize that all the persons affected by the death of an injured person were not given a cause of action by the statute.

The question, therefore, then arises: Was injury by reason of breach of warranty included or excluded by the British act and by similar language in section 130 of the Decedent Estate Law? In early law in England a breach of warranty was proceeded on as if a tort had been committed. The action for such breach was an action on the case. (Williston Sales [2d ed.], vol. 1, §§ 195 *et seq.* See, also, the discussion of the nature of an implied warranty in *Hoe* v. *Sanborn*, 21 N. Y. 552.) As late as 1856 it was said (*Dunn* v. *Bloomingdale*, 14 How. Pr. 474, 475): " The distinction between an action like this, and one founded on misrepresentation, is very narrow. In each case the object is compensation in damages for deception. In neither case can the action be said to be brought for the recovery of a *money demand*. The better opinion seems to be that, in all such cases, even though the action may be, in form, upon a contract, application should be made to the court for the appropriate relief." That was said in connection with a rule of the court which provided what notice should be given by the summons if the action was on contract or if the action was for something

else. The procedure at that time with regard to the notice in an action on warranty was the same as that where a common carrier was sued for personal injury arising out of a breach of the contract with the carrier, or in an action for fraudulent representations including a sale of personalty. (See note, *Tuttle* v. *Smith*, 6 Abb. Pr. 329, at p. 335.) The idea that there was a " duty " placed on the vendor of foods runs through the decisions of that time, even subsequent to the adoption of Lord Campbell's Act. (See, also, opinion of Appellate Division in *Gimenez* v. *Great Atlantic & Pacific Tea Co.*, 240 App. Div. 238.) In *Jackson* v. *Watson & Sons* (L. R. [1909] 2 K. B. 193, at p. 198) the court said: " In the present case the cause of action of the plaintiff arises from the duty of the defendants as vendors of food to the plaintiff as purchaser through his wife as his agent, just as in *Baker* v. *Bolton* (1 Camp. 493) the cause of action arose from the duty of the defendants, the coach proprietors, to the plaintiff." Here again the likeness of cause of action on warranty to one arising from breach of a contract of carriage in the minds of courts of that day is evident. The English case last cited shows that before Lord Campbell's Act if the deceased in our case had sued for a breach of warranty the action would have died with her death. In the cited case the husband's right of action on contract was not affected by her death because there the death was considered to be but a single element of the total damage sustained by him through the breach of the warranty. Inferentially the reasoning in *Jackson* v. *Watson & Sons* (*supra*) indicates that the judges there felt that with the husband's right of action there could exist another right under the statute.

In *Burkhardt* v. *Armour & Co.* (115 Conn. 249, 254; 161 A. 385, 388; 90 A. L. R. 1260, 1264), cited by defendant, the court recognizes that the language of a particular statute, in the light of conditions sought to be met, must be considered in determining if in a given jurisdiction breach of an implied warranty is embraced. Indeed in that case the court assumed that an amendment of the statute of Connecticut was " motivated " because of a decision construing the statute as it had formerly existed.

Prior to the adoption in this State of the statute creating actions in favor of the next of kin, recovery was permitted for personal injuries sustained through consumption of food which was not wholesome. (*Van Bracklin* v. *Fonda*, 12 Johns. 468. See, also, *Moses* v. *Mead*, 1 Den. 378, where the right of an injured person in England to recover on an implied warranty of food products for immediate consumption was recognized in the opinion and in briefs of counsel for both parties.) Therefore, in England and in this State, litigation for injuries sustained as a result of breach of

warranty in food products was not uncommon. Nothing in the language of the acts requires the conclusion that such cases were not thought to involve an accident through "default." The definition of an accident given in *Lewis* v. *Ocean Accident & Guarantee Corp.* (224 N. Y. 19, at p. 21) is broad enough to include them. If those who die from drugs which they assumed harmless but which are harmful, because of the presence of an unexpected substance, die from accident (*Gohlke* v. *Hawkeye Commercial Men's Assn.*, 198 Iowa, 144; 197 N. W. 1004; 35 A. L. R. 1177), then a person who dies from eating food supposedly good but with a harmful foreign substance can be said to have met an accidental death. Section 130 of the Decedent Estate Law has been held to take within its scope more than mere negligent acts or omission causing death. (*Griffin* v. *Bles*, 202 App. Div. 443. See, also, dicta in *Werra* v. *Cassedy*, 229 App. Div. 590.)

Courts find it hard, in discussing the subject, even in these days, to get away from the smear that has been associated with breach of warranty in food cases. (*McSpeden* v. *Kunz*, 271 N. Y. 131.) It is true that in that case the language of the prevailing opinion suggests a broader scope for our statute of implied warranties than the actual decision. The husband there found that while the statute may have been adopted to protect and safeguard the life of the vendee and "her family," he could not recover because he was not the buyer. In that case no death was involved. The purpose of the citation is to show that there persists, as Professor Williston suggests in his book on Sales, a notion of wrong conduct in a breach of warranty. It would seem, therefore, that when the legislators used the expressions "wrongful act" or "default" at the period of the enactment of the laws applicable, they were not necessarily excluding breach of warranty from either of those general expressions. In Blackstone's day and before, breach of warranty had a tortious trait. We do not need, therefore, to determine whether what has been said in many cases as to the inapplicability of the statutes to causes of action based purely on contract is valid or otherwise. That subject has produced a conflict sufficient to give joy to the most belligerent, even though dicta and not decision has been the issue of battle.